ALEXANDER D. SHAW & CO. v. UNITED STATES.

(Circuit Court, S. D. New York. June 5, 1905.)

· No. 3,907.

1. CUSTOMS DUTIES—UNIFORMITY—CONSTITUTION—LEAKAGE OF WINE—GAUGE.

On an importation of wine in casks, having a wantage in excess of normal, the collector assessed duty without allowance for the excess, on the ground that it was due to leakage and was within the terms of paragraph 296, Schedule H, § 1, c. 11, Tariff Act July 24, 1897, 30 Stat. 174 [U. S. Comp. St. 1901, p. 1654], forbidding "constructive or other allowance for breakage, leakage or damage on wines." *Held*, that this was in violation of section 8, art. 1, Const. U. S., prescribing that "all duties * * * shall be uniform throughout the United States."

2. SAME—SUBJECT-MATTER—CONSTITUTION.

Section 8, art. 1, Const. U. S., giving Congress power to lay and collect duties, necessarily implies that there must be some article imported on which such duty is imposed.

On Application for Review of a Decision of the Board of United States General Appraisers.

For decision below, see G. A. 5,939 (T. D. 26,086), which affirmed the assessment of duty by the collector of customs at the port of New York.

Hatch, Keener & Clute (J. Stuart Tompkins, of counsel), for importers.

Henry A. Wise, Asst. U. S. Atty.

TOWNSEND, Circuit Judge. The appellant shipped from abroad certain wines in casks and barrels and certain spirits in bottles. When the importation reached New York there had been a complete destruction of some of the goods, and as to these the Board of General Appraisers properly sustained the protests of the importer, and held that no duty was collectible. As to the other cases, where the spirits were contained in bottles, some of which were broken, the Board of Appraisers properly overruled the protests of the importer and sustained the decision of the collector, and held that no relief could be granted for the broken bottles. This decision was correct under the proviso of Tariff Act July 24, 1897 (chapter 11, § 1, Schedule H, par. 296, 30 Stat. 174 [U. S. Comp. St. 1901, p. 1654]), which reads as follows:

"And provided, further, that there shall be no constructive or other allowance for breakage, leakage or damage on wines, liquors, cordials or distilled spirits."

The only question herein is as to the correctness of the decision of the board in affirming the action of the collector in assessing duty, not only on the amount of wine contained in the casks or barrels, as re-

turned by the gauger, but plus the wantage in excess of normal outage. The normal outage or wantage is defined by the board as:

"The difference between the capacity of a cask or bottle and the quantity of wine or liquor which is usually placed in it, according to the custom of trade, a certain vacancy being allowed for the expansion of such wines and liquors."

The protest of the importers, therefore, is against the action of the collector in assessing duty upon the difference between the actual quantity contained in the casks, as shown by return of the gauger on arrival at the port of entry and the quantity shipped from the foreign port as stated in the invoice. The action of the collector is defended by reason of the proviso in paragraph 296, quoted above. The collector held that this difference in quantity was produced by leakage, and by no other cause, basing this conclusion upon the statement of the United States gauger. This statement, as reported by the collector, was as follows:

"I have to state that the United States gauger, in his return attached to the entry, reports that casks numbers * * * show evidence of leakage, since the outage is 22½ gallons above normal."

It is admitted in the opinion of the board that the practice of the Treasury Department in assessing duties upon similar importations has not been uniform, and that under the provision in the tariff act of 1883, which provided that there should be no allowance for breakage, leakage, etc., the Attorney General had held, in view of the decision of the Supreme Court in Marriott v. Brune, 9 How. 619, 13 L. Ed. 282, and other subsequent decisions, that duty could only be assessed upon the quantity of imported merchandise which arrived in this country, and that any portion not arriving, though described in the invoice, was not dutiable. The Board of General Appraisers, however, seeks to differentiate the question herein by reason of the amendment to the paragraph as above, so as to provide that there should be no constructive or other allowance. The theory of the Board is stated by it as follows:

"The words 'constructive allowance,' thus introduced into the law, would seem to imply an allowance for a leakage which may be presumed or implied, or which would exist in contemplation of law, rather than an allowance for an actual leakage established by affirmative proof."

Whether this change in phraseology actually does effect any change in the operation of the law as applied to the facts herein it is unnecessary to determine. The fundamental question is the constitutional one as to the power of Congress to collect, as alleged duties or imposts, charges on portions of an importation which are nonexistent or which do not arrive when the rest of the importation reaches the United States.

Article 1, § 8, of the United States Constitution, provides as follows:

"Sec. 8. The Congress shall have power: (1) To lay and collect taxes, duties, imposts and excises; to pay the debts and provide for the common defense and general welfare of the United States, but all duties, imposts and excises shall be uniform throughout the United States."

Duties or imposts are taxes levied on articles brought into a country. Brown v. Maryland, 12 Wheat. 419, 6 L. Ed. 678. The power to collect such duty necessarily implies that there must be some article imported into the United States on which such duty is imposed. In the case at bar, although there was a shortage of some 27 gallons of wines which never reached this country, the appellants were required to pay the full duty thereon at the tariff rate. I think this imposition is not justified. It is not only an appropriation of moneys under the guise of taxation, when the object on which the tax is levied does not exist, but the practical effect of such an interpretation would be to violate the provisions of the Constitution that taxes shall be uniform throughout the United States, and such taxation in effect imposes unequal taxation on the quantities of different shipments arriving in the United States. If there were any doubt upon these questions, it would seem to be removed by the recent decision of the United States Supreme Court in Lawder v. Stone, 187 U. S. 281, 23 Sup. Ct. 79, 47 L. Ed. 178.

It is to be noted that in this case there is no competent evidence that the loss arose from any of the causes excepted in the paragraph above. There is nothing in the record which furnishes any evidence of leakage. In fact, the collector by his statement indicates that the sole evidence of leakage is in the fact that the outage is above normal. In these circumstances I fail to find any justification for a departure from the practical construction placed upon the corresponding provision of the tariff act of 1883 by the Treasury Department, customs officials, and the Attorney General of the United States.

The decision of the Board of General Appraisers is reversed.