UNITED STATES v. A. D. SHAW & CO.

(Circuit Court of Appeals, Second Circuit. March 6, 1906.)

No. 152.

CUSTOMS DUTIES—DUTIABLE QUANTITY—SHORTAGE DUE TO LEAKAGE—ALLOWANCE.

In construing the provision in Tariff Act July 24, 1897, c. 11, § 1, Schedule H, par. 296, 30 Stat. 174 (U. S. Comp. St. 1901, p. 1655), that "there shall be no constructive or other allowance for * * * leakage * * * on wines," etc., held, that there can be no allowance made for leakage of wine while in transit to this country. Duty must be assessed on the quantity shipped from abroad.

Appeal from the Circuit Court of the United States for the Southern District of New York.

For decision below, see 141 Fed. 469, reversing a decision of the Board of United States General Appraisers, which had affirmed the assessment of duty by the collector of customs at the port of New York on certain wine in casks.

The opinion filed by said Board reads as follows:

SOMERVILLE, General Appraiser. The importations embraced in these protests consist of wines, liquors, cordials, and distilled spirits. · All of the goods are contained in casks or barrels. * * * The questions raised involve the construction of the second proviso to paragraph 296 of Schedule H of the present tariff act (Act July 24, 1897, c. 11, 30 Stat. 174 [U. S. Comp. St. 1901, p. 1655]), which reads as follows:

. "296. * * * And provided further, that there shall be no constructive or other allowance for breakage, leakage, or damage on wines, liquors, cordials, or distilled spirits."

The importations fall under one or more of the following classes: (1) Where the liquor is imported in casks or barrels or other like coverings, and has entirely leaked out in transitu, so as to leave the casks totally empty on arrival in this country. (2) Where the casks have arrived at the port of entry containing a substantial quantity of liquor in them, and not entirely empty, and where an invoice or entry shows the quantity originally shipped. *

*    *    *    *    *    *    *

In the case of all the liquors and wines contained in casks, the gauger reported certain wantage or outage "in excess of normal," which, as stated by him, "would indicate leakage." Duty was accordingly assessed upon the quantity of these liquors found by the gauger, plus the wantage in excess of normal outage. This assessment was made in accordance with instructions of the Treasury Department, based on the opinion of the solicitor of the Treasury, dated May 7, 1904. See T. D. 25,302, and also T. D. 25,418. The collector, in the case of the empty casks, * * * assessed duty upon the quantity of wine stated in the invoices less the deduction for normal outage. In all these cases the importers claim that duty should have been assessed only upon the quantity of liquors and wines which arrived in this country as shown by the return of the gauger.

The practice of the Treasury Department in assessing duties upon similar importations has not been uniform, and has varied under different statutes that have prevailed since March 2, 1799, all of which, down to and including Tariff Act March 3, 1883, c. 121, 22 Stat. 488 [U. S. Comp. St. 1901, p. 2247], are reviewed in the opinion of Attorney General Brewster, rendered to the Secretary of the Treasury on October 26, 1883, and found in volume 17 of Opinions of Attorney General, at page 613. This opinion construed the proviso in the tariff act of 1883, which declared that there should be "no allowance for breakage, leakage, or damage on wines, liquors, cordials, or distilled spirits." See paragraph 308 of said act of 1883. The Attorney General expressed the opinion that the effect of this proviso was to repeal all previous provisions in force which authorized such allowance, but that nevertheless· it permitted duties to be assessed only on the quantity of merchandise actually imported, whether in casks or bottles, upon the theory that the Supreme Court had ꞏꞏꞏꞏ in the case of Marriott v. Brune, 9 How. 619, 13 L. Ed. 282, and other subsequent decisions, that duty could be assessed on imported merchandise only upon the quantity which arrives in this country; the portion not arriving, though described on the invoice, not being dutiable. Since that decision was rendered the phrase construed by the Attorney General has been materially modified, as shown by the opinion of this Board, reviewing all the statutes on the subject, in the case of In re Gilmore, G. A. 3,692 (T. D. 17,644), which arose under paragraph 243, Schedule H, § 1, Tariff Act Aug. 28, 1894, c. 349, 28 Stat. 525. The language of the statute has been amended by paragraph 336, Schedule H, § 1, Tariff Act Oct. 1, 1890, c. 1244, 26 Stat. 589, and also by paragraph 244, Schedule H, § 1, Tariff Act Aug. 28, 1894, c. 349, 28 Stat. 525, and again by paragraph 296 of the present tariff act of 1897, which reads as above set out. These enactments provide that there shall be "no constructive

or other allowance for breakage, leakage or damage on wines, liquors, cordials or distilled spirits." The words "constructive allowance," thus introduced into the law, would seem to imply an allowance for a leakage which may be presumed or implied, or which would exist in contemplation of law, rather than an allowance for an actual leakage established by affirmative proof. In Gilmore's Case, just cited, the Board held that the destruction of champagne bottles by breakage and leakage could not be allowed for as a deficiency or nonimportation, because the statute operated as a modification of the general rule declared in Marriott v. Brune, supra, and other like cases. Note In re Saenz & Co., G. A. 5,891 (T. D. 25,965), and authorities cited.

In Gilmore's Case the following language was used by the Board in answer to the contention of the importer: "The answer to this contention is that deficiencies and shortages of wines and liquors imported in bottles are specially provided for, so as to take them out of the operation of section 2921, Rev. St. [U. S. Comp. St. 1901, p. 1929]. Such deficiencies are designated as 'breakage, leakage, or damage on wines, liquors,' etc. Paragraph 244, Tariff Act 1894. In the absence of this special provision, the destruction of a case of wine by breakage would clearly come within the provisions of said section 2921, unless it could be construed to be a damage allowance such as is abolished by section 23, Customs Administrative Act June 10, 1890, c. 407. 26 Stat. 140 [U. S. Comp. St. 1901, p. 1930]. But the effect of the present tariff law, as contained in said paragraph 244, is to bring broken bottles of wines and liquors, which may have been broken on the voyage of importation, within its special scope, and for such a deficiency of this kind of merchandise no allowance is provided. It is in fact expressly prohibited. It is no reasonable objection to this construction of the law that it operates to assess duty arbitrarily upon goods which never arrived in this country. The requirement of the law is that wines and other spirituous liquors, mentioned in Schedule H, and imported in bottles or jugs, 'shall be packed in packages containing not less than one dozen bottles or jugs in each package, or. duty shall be paid as if such package contained at least one dozen bottles or jugs.' One bottle in a package would thus be assessed as if it were a dozen bottles, whether the deficiency may have occurred by accident or design. The validity of such a law was sustained over 20 years ago by Judge Shipman in Bensusan v. Murphy, 10 Blatchf. 530, 3 Fed. Cas. 239, decided by the Circuit Court for the Southern District of New York. The same reasoning applies in favor of the validity of a law which arbitrarily disallows any reduction of duties for loss by breakage, leakage, or other damage."

Normal outage or wantage may be defined to be the difference between the capacity of a cask or bottle and the quantity of wine or liquor which is usually placed in it according to the custom of trade; a certain vacancy being allowed for the expansion of such wines and liquors. Such practice among merchants is well known, and is a matter of common knowledge, and is recognized by customs practice. No objection can be made by the importers to an allowance for such normal outage, for it is favorable, and not prejudicial, to their interests.

The gist of the objection made by the importers is their challenge of the collector's assumption that the difference between the actual contents (as shown by the return of the gauger), on arrival at the port of entry, and the quantity shipped from the foreign port, was produced by leakage, and not by other cause. In other words, they assert that the collector has assumed that there was a certain amount of leakage, for which conclusion he had no justification. His decision in these various cases seems to have been predicated upon the opinion of the gauger who examined the casks, and as an expert made his return to the effect that the difference in the quantity of the wine or liquor was probably due to leakage. We are of opinion that, where the quantity of wine or liquor shipped from the port of origin is described on the invoice as so many gallons or liters as required by law, the collector is justified in assuming that such quantity was shipped. Invoices are sworn documents and presumably are correct. Greely v. Thompson, 10 How. 225, 239, 13 L. Ed. 397; U. S. v. May, 26 Fed. Cas. 1,224; One Hundred and Twenty-Three Packages of Glass, 18 Fed. Cas. 709, 711. The rule being also settled that there is a presumption in favor of the correctness of a collector's decision in assessing duties on im-

ported merchandise, unless controverted by the record or other evidence, we think the onus was on the importers in the present cases to furnish some evidence to rebut the legitimate assumption that the reduction in the quantity shipped was attributable to no other causes than leakage. The disappearance of so great a quantity from the casks is not easily explainable on any other theory.

We decide nothing as to cases where, by neglect or otherwise, there is nothing in the invoice or entry to indicate the quantity in the casks when shipped from abroad. and where there is no other evidence to supplement proof of this fact. No case of this kind would properly arise, if importers are required by the collector, as generally they are, to comply with the requirements of section 2,785, Rev. St. [U. S. Comp. St. 1901, p. 1867], and article 387 of the customs regulations of 1899, having reference to the preparation of invoices and entries of imported merchandise. It is as much the duty of importers to state the quantity of imported merchandise as its value. Hoeninghaus v. U. S., 172 U. S. 622, 19 Sup. Ct. 305, 43 L. Ed. 576. So, too, in the first class of cases above mentioned, the rule would be different; the cask or barrel being found on arrival to be absolutely empty, even though such loss or destruction of the liquor occurred through leakage in transitu. Such entire leakage operates as an absolute destruction of the merchandise, and not as a mere damage of it, and cannot fairly be construed to come within the description of "leakage," as used in said paragraph 296, which would imply that a portion at least of the wine or liquor had arrived, while the remainder had disappeared by the process of leakage. This view has been sustained in various decisions of the Board. In re Serror, Abstract 1,064 (T. D. 25,218), April 14, 1904. Moreover, it would seem to fall within the principle laid down in Marriott v. Brune, supra, and Lawrence v. Caswell, 13 How. 489, 14 L. Ed. 235, holding that duty can be assessed only on the quantity of merchandise actually arriving in the United States; the court observing that under any other rule "we shall in truth assess here what does not exist here." The decision of the Supreme Court in Lawder v. Stone, 187 U. S. 281, 23 Sup. Ct. 79, 47 L. Ed. 178, construed section 23 of the customs administrative act and would seem to be in point in the present case. Said section 23 abolishes all allowance for damage, but the court held, nevertheless, that it did not prohibit an allowance on the ground of nonimportation for fruit that was so spoiled and rotten as to be entirely destroyed and worthless. By a parity of reasoning we hold that the entire destruction by leakage of wine or liquors contained in casks could not be construed to come within the purview of the prohibition contained in said paragraph 296. It can scarcely be assumed that where, say, 100 gallons of whisky or brandy are exported from London or some other foreign port, and the cask only arrives in this country, worth perhaps 50 cents, Congress intended that a duty of $225 should be levied upon the cask; that being the amount of duty that would properly have been collectible if the entire 100 gallons had been imported from abroad.

It may be admitted that the rule against allowance for leakage is a severe one in that class of cases where say 50 gallons, more or less, leak out of a full cask of wine or liquor. Unless, however, we bring such cases within the purview of the prohibition in said paragraph 296, there would be no room whatever for its operation. The well-settled rule is that a construction which leaves to a sentence or clause of a statute no field of operation should be avoided. Where a substantial quantity of the wine or liquor arrives in the United States, there is something upon which duty can be assessed; and the only effect of disallowing leakage is to raise the amount of duty on the portion of the liquor actually coming into the country, and this has been held to be within the power of Congress, in Bensusan v. Murphy, 10 Blatchf. 530, 3 Fed. Cas. 240. heretofore mentioned. In that case no allowance was made for bottles not arriving and not packed in accordance with the requirements of the statute.

The construction we have placed upon said paragraph 296 is in harmony with the policy of section 2,983 of the United States Rev. St. [U. S. Comp. St. 1901, p. 1958], providing that "in no case shall there be any abatement of the duties or allowance made for any injury, damage, deterioration, loss or leak-

age sustained by any merchandise, while deposited in any public or private bonded warehouse." See In re Buchert, G. A. 2,794 (T. D. 15,400). The paragraph under consideration extends this statute, so far as leakage is concerned, to goods on shipboard prior to arrival in the United States. The same would be true, also, as to any leakage on shipboard after arrival, under the principle decided by the Supreme Court in Hartranft v. Oliver, 125 U. S. 525, 8 Sup. Ct. 958, 31 L. Ed. 813. See, also, Seeberger v. Schweyer, 153 U. S. 609, 14 Sup. Ct. 881, 38 L. Ed. 839. Such goods are constructively in a bonded warehouse prior to delivery to the importer. In Seeberger v. Schweyer the same doctrine was laid down as to goods in the hands of a common carrier between the port of arrival and the port of ultimate destination. It is not necessary for us to justify Congress in enacting a law of this character, but its policy was no doubt suggested by the practical difficulty of proving whether leakage of this kind occurred in transitu before arrival, or after arrival while on shipboard, or on the wharf before delivery, or in the storehouse of the importer after he received his goods, or while in a bonded warehouse. If any other rule existed, a vast multiplicity of suits of most difficult determination would arise in cases of this kind.

Following the views above expressed, we conclude as follows: (1) That where casks or barrels formerly containing wines or liquors arrive entirely empty, even though this condition has been brought about by leakage in transitu, no duty can be assessed upon the invoice or other quantity. (2) Where a partial leakage has occurred in transitu, casks arriving with a substantial quantity of liquor in them, duty can be assessed upon the quantity stated in the invoice, less an allowance for normal outage or wantage, as established by the custom of trade and the customs practice.

＊ ＊ ＊ ＊ ＊ ＊ ＊

The result of the principles which we have laid down may best be shown by the following schedules, in which the different classes of cases are separated according to the conditions under which the various importations have been made. In the following cases there has been a complete destruction of the goods, amounting to a nonimportation, as above explained, and no duty is properly collectible. The protests are therefore sustained. ＊ ＊ ＊ In the following cases the outage is reported as excessive, but appears to have been the result of leakage. The invoice and entry show the quantity shipped from abroad. The collector assessed duty on the quantity returned by the gauger, plus the outage in excess of normal. This action was right, and the protests are overruled; the collector's decision being affirmed. ＊ ＊ ＊

The protests mentioned in the first schedule covering cases of complete loss are sustained to the extent indicated, and the collector's decision is reversed, and he is instructed to make the appropriate reliquidation of the entries. In the remaining cases the protests are overruled and the collector's decision is affirmed.

Henry A. Wise, Asst. U. S. Atty.

Hatch & Clute (J. Stuart Tompkins, of counsel), for importers.

Before WALLACE, LACOMBE, and COXE, Circuit Judges.

PER CURIAM. Decision reversed, approving the opinion of the Board of General Appraisers.