PARK & TILFORD IMPORT CORPORATION *v.* UNITED STATES (No. 4181)[1]

United States Court of Customs and Patent Appeals, February 8, 1939

*Benjamin A. Levett* for appellant.

*Webster J. Oliver*, Assistant Attorney General (*Charles D. Lawrence*, Special Assistant to the Attorney General, *Joseph F. Donohue*, special attorney, and *Frank X. O'Donnell, Jr.*, junior attorney, of counsel), for the United States.

[Oral argument December 7, 1938, by Mr. Levett and Mr. Lawrence]

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges

BLAND, Judge, delivered the opinion of the court:

The appellant corporation entered as imported (at the port of New York) 10,000 cases, each of twelve bottles, of Scotch whisky, upon which the collector assessed a duty under paragraph 802 of the Tariff

---

[1] C. A. D. 38.

Act of 1930 of $5 per proof gallon. Two cases were short-landed and five bottles were missing from the cases delivered to the importer. The collector made allowance for the short landed and missing items, but refused to make allowance for twenty-one bottles in twelve cases which had been broken, the entire contents of each bottle having leaked away.

Appellant protested the action of the collector and in the protest, by a broad general allegation, challenged the right of the collector to assess duty upon goods which were "never imported and therefore not legally subject to customs duty or other tax."

In the report of the collector appears the following:

Duty was assessed at $5.00 per proof gallon under paragraph 802, Act of 1930, on the basis of the report of the Surveyor and also the return of content and gauge reported by the Appraiser. Note paragraph 811, Act of 1930.

The Surveyor's report shows two cases short landed, five bottles missing * * * and twenty-one bottles broken, ten of the latter representing a breakage of less than 10%. Note paragraph 813, Act of 1930.

Allowance was made in liquidation for the two cases which were short-landed and five missing bottles. No allowance was made for any of the breakage of twenty-one bottles on account of the ten per cent limitation clause, also as the affidavit furnished did not show detailed specifications.

Appellant filed an affidavit which is stated to have been an attempt to comply with the provisions of paragraph 813 of said act with reference to the allowance of leakage in event it amounts to 10 per centum or more of the total value of the contents of the "package." In each of ten of the twelve cases containing broken bottles there was only one broken bottle. In one of the twelve cases there were two broken bottles and in another there were nine. For reasons not necessary to discuss here, the affidavit was regarded by the collector as insufficient.

At the trial before the Third Division of the United States Customs Court the appellant introduced no evidence except the official papers in the case. The trial court overruled the protest of appellant, held said paragraph 813, which forbids allowance for leakage in liquors, etc., except under circumstances named in the paragraph, to be constitutional, and concluded that the collector's assessment of the duty was valid and proper. It also held that the affidavit of the importer was insufficient.

Upon appeal to this court, appellant waived all questions except that relating to the constitutionality of said paragraph 813 and moved to dismiss and caused to be canceled from the record all assignments of error except those directed to the question of constitutionality. Since there is no question relating to the sufficiency of the affidavit here urged by appellant, we may presume, for the purpose of the decision of this case, that in the shipment involved there was no package delivered to the importer which presumptively contained

less than 90 per centum of the total value of the liquor which was originally placed in the package. Appellant's counsel frankly stated that in view of certain decisions of this court it was probable that the judgment of the trial court would not be reversed here, but that it was his aim and hope to get an expression on the constitutional phase of the case from the Supreme Court of the United States (which has never passed upon the particular issue here involved) in the event it, on certiorari, reviewed the decision of this court.

Paragraph 813, *supra*, reads as follows:

PAR. 813. There shall be no constructive or other allowance for breakage, leakage, or damage on wines, liquors, cordials, or distilled spirits, except that when it shall appear to the collector of customs from the gauger's return, verified by an affidavit by the importer to be filed within five days after the delivery of the merchandise, that a cask or package has been broken or otherwise injured in transit from a foreign port and as a result thereof a part of its contents, amounting to 10 per centum or more of the total value of the contents of the said cask or package in its condition as exported, has been lost, allowance therefor may be made in the liquidation of the duties.

It is appellant's position that in this instance the law imposing duties has nothing upon which to operate; that when the liquor leaked out there was no liquor to import and that it never was an importation; that Congress has no power to levy customs duties except that granted by the Constitution; that one of the powers granted to Congress is to "lay and collect  *  *  *  duties"; that duties are by the courts defined as taxes levied upon articles imported from foreign countries; that the Constitution granted to Congress no power either expressly or impliedly to lay and collect customs duties on articles that are not imported; that otherwise it would be granting to Congress the right to tax goods when they were outside of the United States and when they never reached its borders, and that any legislative attempt to lay duties upon nonimported liquors would be *ultra vires* and void.

The Government argues that the question is no longer an open one and "that the constitutionality of paragraph 813 is *stare decisis*," calling particular attention to certain decisions of this and other courts which will be discussed more fully hereinafter.

The provisions of paragraph 813, *supra*, are the same in substance as those which have been in full force and effect for about half a century, and it is not without significance that in preparing all the various tariff acts during that period Congress has seen fit to single out intoxicating liquors for this special treatment. It is a matter of common knowledge that by reason of the inherent character of the commerce growing out of liquors, legislative bodies have usually legislated with very great care so as to minimize the chances of defrauding the revenue or evading the legislative will. Unquestionably

the provision had for its major aim the protection of the revenue from frauds and for convenience in the administration of customs laws. We think, for reasons presently stated, that when Congress enacted the provision and its predecessors it was exercising power expressly granted by the Constitution of the United States. Whether Congress obtained its power through the express grant of the power to regulate commerce with foreign nations or to lay duties or both is immaterial.

We think it fallacious to argue that the collector is levying duty on something which has not been imported if he, in cases like this, in carrying out the will of Congress, refuses to make leakage allowance and assesses duty on the entered quantity in instances where the packages which were imported and delivered to the importer presumptively contained more than 90 per centum of the total value of the liquor which was originally placed in the packages.

In the decision of the issue presented, we desire to confine ourselves strictly to the facts in this case. It is not a case where all the liquor of a shipment or a "package" leaked before importation. Unquestionably, the importer intended to import liquor in cases and it did so. There is no charge of duty upon any package involved herein except upon a package which presumptively contained more than 90 per centum of the value of the Scotch whisky as originally packed in the packages. Upon the exact question presented, we are in agreement with the position taken by the Government to the effect that the holdings of this and of other courts are so clearly in point on the issue at bar as to be controlling of our decision.

Appellant relies in large part upon the case of *Lawder* v. *Stone*, 187 U. S. 281, where the Supreme Court held that the importer had a right to a reduction of the duties levied on a cargo of pineapples for the reason that a portion of them was utterly decayed and worthless. The statute under consideration there (the customs administrative act of June 10, 1890, section 23) provided that no allowance was to be made for damage to "goods, wares, and merchandise, imported into the United States, unless the importer shall abandon to the United States a portion of such articles amounting at least to 10 per cent of the total invoice   *   *   *." The court construed the provision to mean that Congress could not have regarded the rotten pineapple slush there involved as such imported goods, wares, and merchandise as could have been abandoned to the United States within the meaning of the provision.

No question of the intention of Congress is involved in the instant appeal. No one disputes the fact that Congress, by the enactment of the controverted provision, intended that if one imported liquor and a portion of it had leaked away before importation he was not to be granted any allowance for the leakage unless, as shown by a proper affidavit, verifying the gauger's return, it amounted to 10 per

centum or more of the value of the contents of the packages. Appellant does not question the intent of Congress. He challenges its constitutional right so to legislate.

In paragraph 296 of the tariff act of 1897, a provision comparable in all respects which are material here to the one with which we are now concerned, was enacted, and the Board of General Appraisers (now the United States Customs Court) in an opinion by General Appraiser Somerville, in *In re E. LaMontague & Sons et al.*, T. D. 26086, 9 Treas. Dec. 300, decided almost the exact issue which we have before us. On appeal, the Circuit Court for the Southern District of New York reversed the decision of the board, the case being reported as *Alexander D. Shaw & Co.* v. *United States*, 141 Fed. 469. On appeal to the Circuit Court of Appeals, the decision of the Circuit Court was reversed and the opinion of the Board of General Appraisers was approved. *United States* v. *A. D. Shaw & Co.*, 144 Fed. 329. So clearly and logically had General Appraiser Somerville stated the law that the Circuit Court of Appeals quoted his opinion practically in its entirety and approved it in a two-line decision. The Supreme Court of the United States denied certiorari in 203 U. S. 591. We quote some of the language used by General Appraiser Somerville:

It may be admitted that the rule against allowance for leakage is a severe one in that class of cases where, say, 50 gallons, more or less, leak out of a full cask of wine or liquor. Unless, however, we bring such cases within the purview of the prohibition in said paragraph 296 there would be no room whatever for its operation. The well-settled rule is that a construction which leaves to a sentence or clause of a statute no field of operation should be avoided. *Where a substantial quantity of the wine or liquor arrives in the United States, there is something upon which duty can be assessed; and the only effect of disallowing leakage is to raise the amount of duty on the portion of liquor actually coming into the country;* and this has been held to be within the power of Congress in Bensusan v. Murphy (3 Fed. Cas., 240; 10 Blach., 530) heretofore mentioned. * * * [Italics ours.]

In summing up, it was further said:

Following the views above expressed, we conclude as follows:

1. That where casks or barrels formerly containing wines or liquors arrive entirely empty, even though this condition has been brought about by leakage in transitu, no duty can be assessed upon the invoice or other quantity.

2. Where a partial leakage has occurred in transitu, casks arriving with a substantial quantity of liquor in them, duty can be assessed upon the quantity stated in the invoice, less an allowance for normal outage or wantage, as established by the custom of trade and customs practice.

3. Where liquors or wines are imported in bottles, packed as required by said paragraph 296, and a breakage of the bottles occurs in transitu, by accident or otherwise, no deduction or allowance can be made for the contents thus lost on the theory that it is a nonimportation.

Appellant especially emphasizes the fact that where there is nothing imported there is nothing upon which to lay duty. The difficulty with that position is that importer did import liquor. In each package

where there were one or more bottles broken, there remained in the package bottles of liquor which were imported and which presumptively contained more than 90 per centum of the total value of the whisky as originally placed in each package. As we see it, Congress with its usual solicitude concerning the manner in which the customs officials should treat the importation of liquor, in effect, by the controverted provision, told the collector to require the importer who had lost less than 10 per centum of the total value of each package of his liquor in transit, but who removed a portion of it from customs custody, to pay a higher rate of duty on that which he did import. Clearly, we think that if Congress deemed this step necessary to make effective its power to lay duties or to regulate commerce with foreign countries it did not exceed the express grant of power of the Constitution.

It is not necessary for us to go as far in this case as did the Board of General Appraisers in *In re Montague, supra,* and we express no opinion as to what holding would be required in event, under existing law, all the bottles of a given package were broken and no liquor whatever remained therein. Nor is it our intention here to express any approval or disapproval of any holding in any of the decisions herein quoted except those holdings that have a direct bearing upon the particular issues presented upon the particular facts shown by the record at bar.

The logical reasoning in that case is so clearly applicable to the issue at bar that we might well rest the decision of this case upon it without any further discussion of the authorities. However, there is one decision by this court based upon the *Montague* case, *supra,* which seems to be so much in point, both as to the facts and the application of the law, as to invite some special attention.

In *Cataldi Aurola et al.* v. *United States,* 2 Ct. Cust. Appls. 340, T. D. 32077, this court had substantially the same question presented as the one at bar. Duty was assessed on the gauged amount of wine plus wantage in excess of normal outage. Congress had in the tariff act of 1909 a provision comparable to the one at bar which was to the effect that there should be no allowance for breakage, wantage, or leakage on wines, etc. One of the contentions there made was that it was beyond the power of Congress to tax goods that never arrived in the country. The court reviewed the *Montague* case, *supra,* and other cases and stated that the provision was administrative in character and was designed to "prevent fraud and for convenience in the administration of the customs laws." It distinguished the case of *Marriott* v. *Brune et al.,* 9 How. 619, where it was said:

* * * The collection of revenue on an article not existing, and never coming into the country, would be an anomaly, a mere fiction of law, and is not to be countenanced *where not expressed in acts of Congress,* nor required to enforce just rights. [Italics ours.]

It also distinguished the case of *Lawder* v. *Stone*, *supra*, which contained the following expression:

*It would require a clear expression by Congress of its intention* to adopt a contrary policy before a court would be justified in holding that such was the purpose of the legislative branch of the Government * * *.

It was then said:

In numerous cases also the court has held that the language of the paragraph in question should be strictly construed, and it has not been applied to forbid allowance for leakage of articles not within the terms of the act. But beyond this the courts have not gone, and indeed every decision which has come under our notice has not only applied the rule fixed by the statute to cases falling strictly within it, but in no case has any doubt as to the constitutionality or validity of the act been expressed, with the exception of Shaw v. United States (141 Fed. Rep., 469; T. D. 26488), which was a review of the Montague case, in which case, the Circuit Court in its decision made use of the statement that the power to collect duty necessarily implies that there must be some article imported into the United States on which duty is imposed. If this language be assumed to imply a limitation upon the power of Congress to refuse to allow for leakage, where an importation of some quantity of the article still occurs, it is a sufficient answer to say that that case was reversed on appeal to the Circuit Court of Appeals, and the opinion of the board affirmed. United States v. Shaw & Co. (144 Fed. Rep., 329). On application for certiorari to the Supreme Court, the writ was denied (203 U. S., 591.)

The point involved is *stare decisis*, and we think that the question has been rightly decided.

It seems to us that the *Cataldi Aurola et al.* case, *supra*, based as it was upon the sound reasoning in the *Montague* case, *supra*, requires a similar holding here unless that decision is to be overruled.

The case of *Park & Tilford* v. *United States*, 9 Ct. Cust. Appls. 53, T. D. 37906, cited and discussed in the decision of the trial court, contains certain language directed to a provision comparable to paragraph 813, *supra*, which has an oblique bearing on the issue presented, but in that case there was no claim of leakage and it is not necessary in this case to rest our decision in any part upon the decision in that case.

We think the decisions upon which we here rely as controlling authority are sound and we must conclude that appellant's contention that the collector's act, in levying duty in the manner and amount aforesaid and in refusing to allow for said leakage, was in compliance with an unconstitutional statute, is without merit.

The trial court properly overruled appellant's protest and the judgment appealed from is *affirmed*.