(C. D. 598)

Joseph E. Seagram & Sons, Inc. v. United States

United States Customs Court, Third Division

(Decided March 2, 1942)

*White & Case* (*Thomas Kiernan* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Richard E. FitzGibbon*, special attorney), for the defendant.

Before Cline and Keefe, Judges

Keefe, Judge: This action arising at the port of Indianapolis involves the proper gauge of certain whisky used as a basis for the assessment of duties. The importer contends that duty was taken upon too great a quantity of whisky.

The facts attending the importation as shown by the record and exhibits are as follows: The whisky was the product of Canada, manufactured by the Distillers Corporation, Ltd., at Ville La Salle,

Province of Quebec. The distillers had on hand about 250,000 imperial gallons in barrels and kegs which were not filled to capacity. The shipments here in question pertain to 213 barrels thereof. Prior to importation the importer discussed with the collector at Indianapolis and the Commissioner of Customs the practice prevailing as to the quantities of whisky which would be used as a basis for assessing the duties thereon when imported in barrels and kegs not filled to capacity. Thereafter a telegram was sent to the Commissioner in language following:

As discussed by our attorney Mister Van Buren last Friday we desire to import certain packages of whiskey which packages are not filled to capacity stop May packages partially filled be imported and will duty be determined on actual quantity as stated in invoice accompanying bill of lading and entry gauge stop Our understanding packages need not be filled to capacity but importation customs duty and revenue taxes will be based on actual content stated in invoice stop Confirmation desired and reply Western Union would be appreciated.

In reply to foregoing telegram the Commissioner of Customs stated:

Replying yours of May eighteenth so far as customs laws and regulations concerned no objection to importation casks or barrels whiskey not filled to capacity stop If specifications of contents each package given in invoice and customs gauger finds specifications correct duty and revenue tax in absence of allowance under paragraph eight thirteen tariff act will be based on actual quantity shipped under article eight one seven Customs Regulations and Treasury Decision two, seven three seven nine.

The goods were imported during the year 1938 and placed in the importer's bonded warehouse at Lawrenceburg, Ind., where they were gauged and later withdrawn for consumption. Upon the dates of withdrawal the estimated duties, based upon the customs gaugers' returns of net contents, together with the internal revenue tax, were paid.

To illustrate the customs procedure to this point we may take the record evidence as to barrel numbered 1852, covered by entry 347–L, imported in car number 231788, protest 41249–K. The whisky therein was invoiced and entered as 45.62 gallons at 99 proof. The gauger reported the wine gallons as 49, the hydrometer temperature as 45° F. and the hydrometer indication 95. From table 1 of the Gaugers' Manual the proof spirits were determined as 101. From table 2 it was determined that 49 wine gallons at 101 proof would equal 49.49 proof gallons, and the tax gallons were indicated as 49.4 gallons an increase over the entered quantity of 3.87 gallons. By means of the outage rod it was found by the gauger that the capacity of barrel 1852 was 54 gallons.

Thereafter, to wit, during the year 1940, the collector liquidated the entry. From the gaugers' returns the collector found that the invoice did not correctly state the quantity shipped and therefore the quantity shown upon entry as well as the quantity returned by the

gaugers was ignored and the liquidation of the duty was computed upon the basis of the quantity indicated by the gaugers' return of capacity less 2½ per centum for outage.

The Tariff Act of 1930 provides that the assessment of duties upon wines, liquors, or distilled spirits shall be governed by regulations issued by the Secretary of the Treasury, the provision reading:

PAR. 815. The Secretary of the Treasury is hereby authorized and directed to make all rules and regulations necessary for the enforcement of the provisions of this schedule.

In pursuance of the authority granted, the Secretary of the Treasury issued regulations relative to the gauging of liquors, published in the Customs Regulations of 1937, so far as pertinent herein, as follows:

Art. 1371. Duties generally.—(a) Each inspector or officer exercising the functions of a gauger will inspect and take copies of all permits in the hands of the discharging inspectors whenever such permits designate articles to be gauged. They will gauge articles so designated and record and make a return of such gauges in the manner hereinafter provided. They will themselves actually do the gauging and report the result.

(b) When gauged by the rod method, each package of wines, spirits, and liquors must be gauged and inspected separately without regard to marks and brands already on such package.

(c) The only fractional part of a gallon to be marked on casks and returned will be one-half gallon.

&ast;&ast;&ast;&ast;&ast;&ast;&ast;

(e) Fractional parts of less than one-quarter gallon will be ignored, one-quarter gallon but not more than three-quarters gallon will be taken as one-half gallon; if three-quarters gallon or more, a gallon.

&ast;&ast;&ast;&ast;&ast;&ast;&ast;

Art. 1372. Instruments to be used.—The instruments to be used for gauging purposes shall be known as the calipers, Gunther's sliding scale, bung-diameter rod, barrel rod, and wantage rod, and a marking or scoring iron for the purpose of marking or scoring barrels, casks, etc., when necessary.

Art. 1373. Tests of instruments.—Each gauger will have his gauging instruments tested as often as may be necessary and keep them in conformity with the United States standard.

Art. 1378. Proof of distilled spirits.—(a) The proof of distilled spirits shall be ascertained by the use of a United States hydrometer set which shall have been tested and approved by the National Bureau of Standards. Instructions relative to proofing as found in the Treasury Department Manual shall be followed.

Art. 823. Weight, gauge, or measure.—* * *

&ast;&ast;&ast;&ast;&ast;&ast;&ast;

(f) * * * Ordinary customs duties shall be collected on the gallonage determined on the basis of the original customs gauge.

The Commissioner of Customs indicated in the telegram in evidence that, if the customs gauger finds the specifications of the contents of each package given in the invoice are correct, duty will be based on the actual quantity shipped under article 817, Customs Regulations of 1931 (article 815, Customs Regulations of 1937) and under T. D. 27379.

Article 815 of the Customs Regulations of 1937 provides in part as follows:

**Art. 815. Definitions—Outages.—** * * *

\* \* \* \* \* \* \*

(d) "Contents in condition as exported" is held to mean the invoiced quantities provided specifications are given for each individual package, otherwise the "contents exported" shall be held to be the gross capacities returned by the gauger.

(e) Outages not within the scope of the preceding subdivisions of this article by reason of being under 10 percent or not being the kind·of loss provided in the law, or by failure to file timely affidavit, will be subject to an allowance of 2½ percent for normal outage from the capacity as shown by the gauger's return or the invoice quantity, according to the circumstances.·

The reference in the telegram to T.D. 27379, published May 28, 1906, was apparently made for the purpose of acquainting the importer with the method prescribed by the department to collectors for use in determining the amount of alcoholic liquors upon which duty should be assessed. Such method, prevailing in practice for many years, is very clearly set out in said decision as follows:

The quantity from which the allowance of 2½ percent should be deducted is the quantity shipped. Such quantity is not necessarily the full capacity of the containers and should be stated upon the invoice. In order to arrive at the allowance to be made, the gauger should return the capacity of the containers and the quantity actually found therein. treating fractional gallons as above stated, and *the entry should be liquidated upon the net gallons returned by the gauger, unless the same be more than 2½ percent less than the quantity shipped, as shown by the invoice, in which case the entry should be liquidated upon the invoiced quantity less 2½ percent. If it appears, however, that the invoice does not correctly state the quantity shipped, the invoice quantity should be ignored and the capacity of the containers taken as the basis from which allowance should be made.*

It will be noted from the foregoing instructions that when the invoiced quantity is less than that actually received in the United States such imported quantity is not taken as correctly indicating the quantity shipped. Likewise the quantity reported by the gauger is disregarded. In such case the capacity of the cask less normal outage is adopted as indicating the quantity shipped.

The questions arising in this case are whether or not the involved whisky was properly gauged by the United States gaugers by means of the rod method rather than the weight method; whether the results at which the gaugers arrived correctly indicated the quantity of whisky imported to be so much in excess of the invoiced and entered quantity that the collector was justified under the law in disregarding the imported quantity and assessing duty upon capacity of containers less normal outage.

The plaintiff attacked the legality of the action taken by various customs officials under the regulations, as well as the accuracy of results obtained by the customs gaugers in determining the quantity

of whisky imported herein. We first present the plaintiff's contentions in respect to the proper application of the customs regulations.

It is contended that article 815, *supra*, has no application to the importations involved herein because such regulation has reference only to certain losses in transit.

The returns of net contents made by the customs gaugers established that the invoiced and entered contents were not representative of the quantities imported. The collector therefore disregarded the same and followed the customary practice of basing his assessment of duty upon the capacity of the containers, less 2½ per centum for outage provided for under article 815. Such practice was held legal when applied to conditions prevailing similar to those here in the case of *Park and Tilford* v. *United States*, 9 Ct. Cust. Appls. 53, T. D. 37906. In that case certain casks were found by the gauger to contain more liquor than the invoice quantity. The collector in his assessment of duty ignored the invoice statement and the gauger's return of quantity and assessed duty upon the capacity of each cask, as found by the gauger, less 2½ per centum for normal outage. The importer claimed that the actual contents of the casks upon arrival should govern the assessment of duty, as such quantity was reported by the gauger, rather than upon a content greater than the gauger actually found in the casks. The court held that the regulations, identical with the regulations herein, to wit, article 815 (*d*) and (*e*), *supra*, were applicable to such a situation even though no loss or leakage was involved, and that such regulations were reasonable.

It is also contended that where the gauger's returns showed the net content to be 1 gallon or more over the net weight because of additions for temperature and because of the practice of increasing fractional parts of a gallon to the nearest ½ gallon, a computation of duty based upon capacity of the containers, less 2½ per centum for normal outage, was erroneous under the method prescribed in the report of the Customs Information Exchange, number 526/35, issued September. 19, 1934.

It will be noted in that connection that the collector stated in his letters of transmittal of the protests involved herein that he based his assessment upon capacity, less 2½ per centum, under authority of the Customs Information Exchange letter 526/35, reading in part as follows:

the "minus one" in the order to the liquidators means a deduction of one gallon per cask from the gauger's net. It is presumably deducted on account of additions made for correction of volume and fractions of gallons by the U. S. Gauger at the time of gauging. In this connection, note T. Ds. 30970 and 31796 and Article 1357 of the Customs Regulations of 1931.

In T. D. 31796, the case of *Batjer & Co.* v. *United States*, reported in 21 Treas. Dec. 105, it was held that imported liquors are dutiable

on the basis of their condition and measurement at the standard temperature of 60° F. prescribed by the Secretary of the Treasury, which is the rule adopted in gauging liquors under the internal revenue laws. The quantities in gallon measurement which were added by the surveyor to the number of gallons actually found by the gaugers, by reason of the so-called correction volume were there held reasonable and valid regulations.

It is further contended that the payment of the estimated duties at the time of withdrawal of the merchandise from warehouse constituted a liquidation, inasmuch as such duties were then computed by the collector, and any additional assessments resulting from further computations made more than a year after the withdrawal of the merchandise from warehouse were illegal. It has been a long-continued and established practice that tentative liquidations made at the time of delivery of imported goods are not regarded as liquidations from which an appeal may be made. In the case of *Wesendonck Lorenz Co. et al.,* v. *United States,* T. D. 18634, G. A. 4032, certain tentative liquidations were involved. The court held that before an entry is considered liquidated the collector shall stamp the entry with the word "liquidated" with the date of stamping and that such stamp becomes legal evidence of liquidation. The right of protest arises within the lawful period prescribed by the statute from the posting of notice of such liquidation, which must conspicuously appear on the day succeeding such stamping.

In article 818 (a) of the Customs Regulations of 1937 "liquidation" is defined as the final computation or ascertainment of duties accruing thereon. Subparagraphs (e) and (h) of such regulation further provide that when the amount of duty assessed by the collector in a tentative liquidation of an entry differs from the total estimated duties the liquidator shall make a new statement of duties over his initials in red ink and after the assessment of duties and internal revenue taxes has been verified by the comptroller, formal entries thereof shall be immediately scheduled on a bulletin notice of liquidation, which shall be posted as soon as possible in a conspicuous place in the customhouse for the information of importers, and such entries shall be stamped "liquidated" and have the same date as the liquidation notice. Such notice is the legal evidence of liquidation.

In the entries before us there appears in red ink a recomputation of the duties greater than the amount paid as appearing originally thereon, and also the stamped word "liquidated" together with the date thereof. It is clear that under the law and the regulations there has been but one liquidation of the entries.

The plaintiff further contends that the customs gauge of the whisky was inaccurate and improper; first, because, when gauged by the

rod method under article 1371, *supra*, each package must be gauged and inspected separately without regard to marks and brands already on the package, and that such method was not followed by the customs gaugers; and, second, that methods of gauging as prescribed in the Customs Gaugers' Manual were not followed, and because of the resulting inaccurate gauge of the customs gaugers, the collector's assessment of duty on a basis other than the invoiced contents was contrary to law. It is specifically pointed out in connection with the gaugers' purported inaccurate returns that improper additions were made for temperature and that increases in volume to the nearest half gallon were illegal.

Several witnesses testified on behalf of the importer, including a number of employees at the importer's bonded warehouse and the United States customs gaugers of the merchandise. Such testimony discloses the following facts: The capacity of the barrels herein could not be obtained by means of the weight method of gauging inasmuch as the outage of a barrel is only obtained by use of the rod method unless it is practicable to fill the barrel to capacity. As the barrels were not filled to capacity and it was not practicable to so fill them, the possibility of a charge for excessive outage arose and it became necessary to determine the vacuity or outage of each barrel. In gauging by the rod method, the barrels at intervals were gauged with the use of the calipers, Gunther's sliding scale, bung diameter rod, and the barrel rod in order to obtain the quantity of contents. The results obtained were compared with the marks on each barrel as to net contents and found to agree therewith within a quarter of a gallon. Where the marks upon the barrels were obliterated, the United States gaugers also used the above method to determine the net contents. The gaugers, having determined that the marked contents of the barrels agreed with the results obtained by the use of rods, accepted the marked contents of the barrels as accurate and proceeded to determine the vacuity as follows: The net weight upon the barrels was converted into the nearest ½ gallon and 1 gallon was added to the result and the total thus found was used as net contents. Then by means of the outage rod the vacuity of the barrel was computed and the result added to the net contents to determine the capacity. The outage rod was used upon all of the barrels to determine the capacity. The quantity reported in the gaugers' dock books was the net contents to the nearest ½ gallon plus 1 gallon. In obtaining the proof of the whisky the importer's employees and the customs gaugers each took tests and when it was found that the results disagreed retests were taken to discover the error.

Another witness, an employee of the plaintiff who was an industrial engineer and accountant, refuted the testimony of the importer's previous witnesses, asserting that the capacity of barrels could be

obtained by means of the weight method of gauging, stating that "all that is necessary, if you know the net content of the package, is to know the capacity and subtract to find the vacuity." The witness failed to explain the manner of determining the capacity. The witness further disputed the accuracy of the net weights appearing in the customs gaugers' dock books, and the necessity of adding one gallon for correction of volume because the temperature and proof strength adopted by the gaugers were not as of the date of shipment of the liquor from Canada. The witness admitted, however, that he had not personally ever gauged any whisky and was not familiar with the rod method of gauging and was unable to produce any evidence of the quantity of whisky imported other than that appearing upon the invoices.

Merchandise imported into the United States is dutiable in its condition and weight at the time of importation rather than in its condition and weight when leaving the foreign country.

From a careful consideration of the evidence we are of the opinion that the gaugers in determining the quantity of merchandise imported acted in accordance with the law and regulations. Since there was no gauge made by the importer it has not been established that the invoiced and entered gauge actually represented the quantity imported. Even were the plaintiff to establish that the gauge made by the customs gaugers was inaccurate and improper, the plaintiff is not entitled to relief because it has not affirmatively been shown that the quantity imported was as invoiced and entered rather than as returned by the customs gaugers. It is well settled in customs jurisprudence that the burden is upon the importer not only to establish that the Government is in error, but also to affirmatively establish the correctness of his claim.

From an examination of the evidence before us we are unable to find anything sufficient to overcome the presumption of correctness of the collector's action.

Judgment will therefore be entered in favor of the defendant.