(C. D. 626)

JOSEPH B. GREENBERG ET AL. *v.* UNITED STATES

## United States Customs Court, Third Division

(Decided April 30, 1942)

*Harper & Harper (Abraham Gottfried* of counsel) for the plaintiffs.
*Paul P. Rao,* Assistant Attorney General (*Richard H. Welsh, Joseph E. Weil,* and *Samuel D. Spector,* special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

KEEFE, Judge: This action involves the collector's assessments of customs duties and internal revenue taxes upon importations of certain whisky from Great Britain. The claim relied upon by the plaintiffs reads as follows:

The quantity of liquor ascertained by you is erroneous. The invoiced and entered quantity is correct. The merchandise should have been liquidated and duty and internal revenue tax should have been assessed on the basis of the entered and invoiced quantity.

By way of amendment of the protests the above claim is supplemented by the addition of the following:

Or with respect to the merchandise protested the Internal Revenue Tax should have been collected on the actual quantity ascertained by the Internal Revenue Gauger at the time of withdrawal.

The Customs Regulations of 1931 in respect to gauging of liquors provide, so far as pertinent herein, as follows:

Art. 1357. Duties generally.—(*a*) Each inspector or officer exercising the functions of a gauger will inspect and take copies of all permits in the hands of the discharging inspectors whenever such permits designate articles to be gauged. They will gauge articles so designated and record and make a return of such gauges in the manner hereinafter provided. They will themselves actually do the gauging and report the result.

(*b*) Each package of wines, spirits, and liquors must be gauged and inspected separately without regard to marks and brands already on such package. Gauging must take place before goods are sent under general order. Liquors in bottles will not be gauged.

[Amended December 10, 1936, T. D. 48704, to read as follows:

(*b*) When gauged by the rod method, each package of wines, spirits, and liquors must be gauged and inspected separately without regard to marks and brands already on such package.]

(*c*) The only fractional part of a gallon to be marked on casks and returned will be one-half gallon.

(*d*) Packages containing malt liquors may be gauged by outside measurement when necessary.

(*e*) Fractional parts of less than one-quarter gallon will be ignored, one-quarter gallon but not more than three-quarters gallon will be taken as one-half gallon; if three-quarters gallon or more, a gallon.

[Amended December 10, 1936, T. D. 48704, by the addition of new paragraphs designated (f) and (g), reading as follows:

(f) Where practicable, packages of wines, spirits, and liquors may be gauged by the weight method when the packages are marked (by scoring (cutting) or dyeing in the wood) with the gross and net weights and the tare, and the collector of customs shall be satisfied that the liquors were gauged prior to exportation and the weights and tare marked on the packages under the supervision of the proper officials of the government of the country of exportation. Each package shall be weighed for verification of the marked gross weight, and if a material difference is found between the marked gross weight and the actual gross weight the capacity of the cask or package shall be ascertained by the rod method. A test shall be made of at least one in five packages for verification of the marked tare by dumping the contents and weighing the empty cask or package. If the test shows the marked tare to be inaccurate each package in the shipment shall be gauged separately by the weight or the rod method.

(g) Gauging must take place before goods are sent under general order. Liquors in bottles will not be gauged.]

Art. 1358. Instruments to be used.—The instruments to be used for gauging purposes shall be known as the calipers, Gunther's sliding scale, bung diameter rod, barrel rod, and wantage rod, and a marking or scoring iron must also be used for the purpose of marking or scoring the capacity and outage, net, proof, and proof-gallons.

Art. 1364. Proof of Liquors.—The proof of liquors will be ascertained by Tagliabue's hydrometer, by which the percentage of proof spirits is indicated by 100° and the notations of proof shall conform to the scales of that hydrometer as explained and corrected in Tagliabue's manual for gaugers.

[Amended September 4, 1936 (T. D. 48516) to read:

Art. 1364. Proof of liquors.—The proof of liquors will be ascertained by a standard hydrometer, and the notations of proof shall conform to the scales of the hydrometer as shown in the gauging manual of the Treasury Department.]

The assessment and collection of internal revenue taxes as provided for in title 26 of the Code of Laws of the United States of America (p. 1140), so far as applicable herein, are provided for as follows:

## SUBCHAPTER A—DISTILLED SPIRITS

### PART I—PROVISIONS RELATING TO TAX

Section 1150. Tax—(a) Rate—(1) Distilled spirits generally. On and after January 12, 1934, there shall be levied and collected on all distilled spirits produced in *or imported into the United States* an internal revenue tax at the rate of $2.00 on each proof gallon or wine gallon when below proof and a proportionate tax at a like rate on all fractional parts of such proof or wine gallon, to be paid by the distiller or importer when withdrawn from bond. * * *

* * * * * * *

(f) Collection of tax on imported distilled spirits. *The internal revenue tax imposed* by paragraphs (1) and (2) of subsection (a) *upon distilled spirits imported into the United States shall,* under regulations prescribed by the Commissioner, with the approval of the Secretary, be *collected and deposited in the same manner as other internal revenue taxes, except that such collection and depositing shall be by the collector of customs instead of by the collector of internal revenue. Such tax shall be in addition to any customs duty imposed under chapter 3 of Title 19, or any subsequent Act.* [Italics not quoted.]

Counsel for the plaintiffs contend that the quantity of whisky present at the time of importation did not exceed the quantity shown by the official certificates of the British Government to have been exported and therefore plaintiffs are entitled to have duty collected upon the quantity of whisky reported by the British Government as having been shipped and not upon any greater quantity, or, upon an amount shown by the gauge taken by the Internal Revenue Department's storekeeper-gauger "at the time of withdrawal" plus the normal loss by evaporation and other causes while in the customs bonded warehouse; that the internal revenue tax should have been collected on such gauge as would have been determined by a method of gauging acceptable to the Internal Revenue Department rather than upon the basis of an unacceptable method of gauging used by the customs gaugers; and that the collector should have been compelled to collect such internal revenue tax upon the correct basis. It was further contended that the collector disregarded the law and the regulations in failing to gauge the whisky at the time of withdrawal from warehouse.

The Government, on the other hand, contends that the assessment of internal revenue taxes on the quantity of liquor shown by the customs gauge at the time of importation, in the absence of a regauge at the time of withdrawal of the whisky from warehouse, was in accordance with law; that the collector is not compelled by law to regauge whisky at the time of withdrawal unless a demand for a regauge is made by the importer; and that gauging whisky by means of rod method of gauging is in accordance with the law and regulations and in failing to prove the gauge taken by the customs gaugers at the time of importation was erroneous, the plaintiffs have failed to overcome the presumption of correctness of the collector's action in accepting such gauge for the purpose of determining the customs duties. It is further contended that any gauge taken after the withdrawal of the whisky from customs custody is immaterial and irrelevant in proving what quantity of whisky was withdrawn from warehouse.

Several witnesses testified for the plaintiffs, including customs officials and two internal revenue agents proficient in gauging liquors at rectifying plants. Among the exhibits admitted in evidence appear the official certificates from the British Government showing the age, proof, and quantity of whisky in each of the containers at the time of exportation; returns made by the internal revenue gaugers at the rectifying plants; gauging manuals used by the customs authorities and those in use by the Internal Revenue Department.

From the record we find that the whisky in question was entered at Los Angeles between February, 1934, and June, 1936, placed in a customs bonded warehouse, and there gauged by the customs gaugers. Immediately prior to withdrawal from said warehouse a number of

the barrels were regauged. However, the major quantity of the importations was not regauged upon withdrawal. Customs duty was collected at the appropriate rates on the quantity of whisky reported by the gaugers at the time of warehousing. The collector also collected the internal revenue taxes upon the whisky in the containers not regauged at the time of withdrawal upon the gauge reported at the time of warehousing. Where the whisky was regauged before withdrawal, the internal revenue tax was collected upon the quantity determined upon regauge.

The evidence establishes that the customs gaugers determined the quantity of whisky contained in the barrels by means of the rod method of gauging in accordance with the customs gaugers' manual; that the containers were of various shapes, some long and narrow and others short and broad, but, in the opinion of the customs gaugers all were of such character as to come within the three types of containers provided for in the manual and were gauged accordingly; that in preparing the barrels for gauging care was taken to level the same so that the bungs were in correct position, although it was admitted that a spirit level was not used nor was it determined whether or not the warehouse floor was level; that in determining the capacity of the containers, allowance was made for a ¾-inch thickness of the heads of the containers without determining whether or not they were of greater thickness; and that the customs gaugers determined that the quantity imported was in excess of the entered quantity and also in excess of the quantity shown upon the British Government certificates as the quantity shipped.

The evidence further establishes that upon withdrawal of the whisky it was transferred under bond to a bonded rectifying plant where an internal revenue agent was in charge and, when subsequently removed from the barrels for rectifying purposes, internal revenue agents regauged the whisky using the weight method of gauging and found a less quantity present than reported by the customs gaugers; that the weight method of gauging is more accurate in results than the rod method of gauging; that where internal revenue agents find a greater quantity than shown upon customs gaugers' reports an additional assessment is made for the deficiency in internal revenue tax, but where the customs gauge is greater no action is taken and no refund is granted because of excessive collection of taxes. Some of the witnesses testified, and the court took judicial notice of the circumstances, that whisky would tend to decrease in quantity because of evaporation and absorption into the wooden containers upon a voyage of importation via the Panama Canal.

The question before us in this case is whether or not customs duties were assessed upon the quantity imported or whether or not internal

revenue taxes were assessed upon the quantity withdrawn from warehouse.

A careful consideration of the evidence is convincing that the customs gaugers performed their duties in gauging the liquor in question in accordance with the foregoing regulations. The plaintiffs not only failed to establish that the barrels containing the whisky were not within the types provided for in the gaugers' manual, but that the gaugers arrived at the wrong results because the thickness of the heads of the containers was other than three-fourths inch, or because either the barrels or the warehouse floor was not level at the time of gauging. Although the court took judicial notice that whisky would tend to evaporate upon a voyage from England through the Panama Canal to the port of destination in the United States, the plaintiffs have not established that there was in fact any evaporation and inasmuch as merchandise is dutiable in its condition and quantity at the time of importation, the quantity found by the customs gaugers upon entry is the proper basis for the assessment of duties. Consequently evidence of any evaporation is immaterial to the issue herein, and insufficient to establish that the customs gaugers' returns were erroneous. Likewise a subsequent regauge of the whisky in question by internal revenue agents at the plaintiffs' bonded rectifying plant resulting in the determination of a lesser quantity of whisky than returned by the customs gaugers is insufficient to establish that the imported quantity did not exceed the quantity shown upon the official certificates of the British Government to have been exported. When the whisky was withdrawn from the customs bonded warehouse, it was released for consumption insofar as the collector of customs was concerned. His jurisdiction over the merchandise then ceased and that of the Internal Revenue Department became effective. In the circumstances herein, the only quantity of whisky applicable in the assessment of customs duties is that determined by the customs gaugers at the time of warehousing.

In the case of *Seagram & Sons, Inc.* v. *United States*, decided March 2, 1942 (8 Cust. Ct. 166, C. D. 598), it was held that gauging by means of the rod method was in accordance with law. In that case the customs gaugers found the barrels were not filled to capacity and that the whisky in the containers was greater in quantity than the invoiced and entered specifications and the certificates of quantity of the foreign government. The collector in such circumstances ignored the customs gaugers' returns of quantity and assessed customs duty on the basis of the capacity of the containers less 2½ per centum for outage. Such assessment was held to be in accordance with law in the circumstances there presented.

In respect to the internal revenue taxes authorized by law to be collected by the collector of customs the quantity upon which such

taxes are taken is determined by the collector of customs while such merchandise is in his custody, and, after the collector's custody has ceased, any other quantity, even though determined by internal revenue agents in accordance with the method of gauging recognized and adopted by the Internal Revenue Department, is immaterial and irrevelant in establishing that the collector of customs failed to take duty upon the actual quantity of whisky at the time of withdrawal from the customs bonded warehouse.

The cases relied upon by the plaintiffs are not here in point. In *Fritz* v. *United States*, T. D. 49637, 73 Treas. Dec. 1045, the whisky in question was of American manufacture, exported and returned to the United States by the exporter thereof. The whisky was admitted free of duty under the provisions of paragraph 1615 as American goods returned. However, the collector of customs assessed and collected the internal revenue tax upon the basis of the entered gauge of quantity even though the collector upon written demand of the importer had regauged the whisky before withdrawal from the customs bonded warehouse. The court held that the collector had acted contrary to the provisions of the United States Code, *supra*, wherein it was provided that internal revenue taxes are imposed upon liquors in bond, whether imported or domestic, at the time they are withdrawn for consumption; and that where there was a regauge of liquors before withdrawal, the collector should compute the internal revenue tax upon the basis of the quantity withdrawn rather than upon the entered quantity. That case is not an authority for holding it was the mandatory duty of the collector to regauge imported spirits at the time of withdrawal. The court, however, pointed out that inasmuch as distillers of domestic spirits were privileged to request a regauge of liquors before withdrawal from a bonded warehouse and upon the grant of such request internal revenue taxes were assessed upon the basis of such gauge, the imposition of revenue taxes upon American-made whisky returned to the United States upon the basis of the entry gauge rather than the withdrawal gauge was contrary to law.

In *Bacardi Corporation* v. *United States*, 11 Ct. Cust. Appls. 252, T. D. 39078, the imported rum there involved remained in warehouse until after the passage of a new revenue act imposing an additional duty on distilled spirits upon the quantity of spirits *then in bond*. Inasmuch as there was a change in rate in the assessment of duty, the court held that the collector was obliged to reliquidate the entry upon the basis of the spirits then in bond rather than upon the basis of the quantity determined by a gauge made 3 years before that time.

There is no change in the law involved in the case now before us and nothing in the statute requiring the collector to regauge the

whisky or to reliquidate upon the basis of the quantity of whisky withdrawn from warehouse, and consequently the *Bacardi* case, *supra*, is inapplicable.

For the reasons stated we are therefore of the opinion that the plaintiffs have failed to disclose anything sufficient to establish that the quantity of whisky upon which the customs duties or the internal revenue taxes were based is other than that reported by the customs gaugers. Being unable to find anything in the evidence sufficient to overcome the action of the collector, which is presumptively correct, judgment will be rendered in favor of the defendant.