CATALDI AUROLA et al. v. UNITED STATES (No. 593).[1]

ALLOWANCE FOR BREAKAGE, LEAKAGE, ETC.

The proviso to paragraph 307, tariff act of 1909, forbidding allowance to be made for breakage, leakage, etc., of merchandise therein described, must be strictly construed and can not be made to apply to merchandise not within its terms; but the legality of that provision itself is now *stare decisis*. The board rightly held the leakage here to be dutiable.

United States Court of Customs Appeals, November 28, 1911.

APPEAL from Board of United States General Appraisers, Abstract 24585 (T. D. 31207).

[Affirmed.]

*Joseph G. Kammerlohr* for appellants.

*Wm. L. Wemple,* Assistant Attorney General (*Wm. A. Robertson* on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

This is an appeal from a decision of the Board of General Appraisers affirming the action of the collector in imposing duty upon 24 casks of wine, the sole question being whether the collector erred in refusing to allow a deduction for leakage.

The report of the collector states that the United States gauger in his return attached to the entry reports certain wantage in excess

---

[1] Reported in T. D. 32077 (21 Treas. Dec., 670).

of normal, which would indicate leakage. Duty was assessed on the amount found by the United States gauger plus wantage in excess of normal outage.

The proviso to paragraph 307 of the act of 1909, corresponding to like provisions in previous acts, reads as follows:

*And provided further*, That there shall be no constructive or other allowance for breakage, leakage, or damage on wines, liquors, cordials, or distilled spirits. * * *.

Two contentions are made: First, that this proviso should be held applicable to goods after their arrival and before delivery to the importer; second, that it is beyond the power to tax goods that never arrived in this country.

It is conceded that the question is not new, as it was considered by the board in Montague's case (T. D. 26086), in which the earlier cases *In re* Saenz & Co., G. A. 5891 (T. D. 25965), and Gilmore's case, G. A. 3692 (T. D. 17644), are reviewed. In the latter case it was said:

The effect of the present tariff law, as contained in said paragraph 244 (corresponding to the proviso to paragraph 307 of the act of 1909), is to bring broken bottles of wines and liquors, which may have been broken on the voyage of importation, within its special scope, and for such a deficiency of this kind of merchandise no allowance is provided. It is, in fact, expressly prohibited.

It is no reasonable objection to this construction of the law that it operates to assess duty arbitrarily upon goods which never arrived in this country. The requirement of the law is that wines and other spirituous liquors mentioned in Schedule H and imported in bottles or jugs "shall be packed in packages containing not less than one dozen bottles or jugs in each package, or duty shall be paid as if such package contained at least one dozen bottles or jugs." One bottle in a package would thus be assessed as if it were a dozen bottles, whether the deficiency may have occurred by accident or design. The validity of such a law was sustained over 20 years ago by Judge Shipman in Bensusan *v.* Murphy (10 Blatch., 530; 3 Fed. Cas., 239), decided by the Circuit Court for the Southern District of New York. The same reasoning applies in favor of the validity of a law which arbitrarily disallows any reduction of duties for loss by breakage, leakage, or other damage.

This case was followed in the Montague case. A review of this decision was sought by the Supreme Court, but the writ of certiorari was denied. See case reported under title of Shaw *v.* United States (203 U. S., 591).

This decision is not inconsistent with the decision of the court in Marriot *v.* Brune (9 How., 619). It was said in that case:

The collection of revenue on an article not existing, and never coming into the country, would be an anomaly, a mere fiction of law, and is not to be countenanced where not expressed in acts of Congress, nor required to enforce just rights.

The provision we are now considering is an administrative provision that was evidently designed to prevent fraud and for convenience in the administration of the customs laws.

So in Lawder *v.* Stone (187 U. S., 281). The Supreme Court, in referring to Marriot *v.* Brune and other decisions said:

It would require a clear expression by Congress of its intention to adopt a contrary policy before a court would be justified in holding that such was the purpose of the legislative branch of the Government—

that is, a purpose to assess duties upon goods not actually imported, and in that case fruit which had become decayed and practically destroyed in transit was held not subject to duty.

In numerous cases also the court has held that the language of the paragraph in question should be strictly construed, and it has not been applied to forbid allowance for leakage of articles not within the terms of the act. But beyond this the courts have not gone, and indeed every decision which has come under our notice has not only applied the rule fixed by the statute to cases falling strictly within it, but in no case has any doubt as to the constitutionality or validity of the act been expressed, with the exception of Shaw v. United States (141 Fed. Rep., 469; T. D. 26488), which was a review of the Montague case, in which case the Circuit Court in its decision made use of the statement that the power to collect duty necessarily implies that there must be some article imported into the United States on which duty is imposed. If this language be assumed to imply a limitation upon the power of Congress to refuse to allow for leakage, where an importation of some quantity of the article still occurs, it is a sufficient answer to say that that case was reversed on appeal to the Circuit Court of Appeals, and the opinion of the board affirmed. United States v. Shaw & Co. (144 Fed. Rep., 329). On application for certiorari to the Supreme Court, the writ was denied. (203 U. S., 591.)

The point involved is *stare decisis*, and we think that the question has been rightly decided.

The decision of the Board of General Appraisers is *affirmed*.