(C. D. 884)

Kolmar, Inc. *v.* United States

United States Customs Court, Third Division

(Decided October 21, 1944)

*Tompkins & Tompkins* (*J. Stuart Tompkins* of counsel) for the plaintiff.
*Paul P. Rao*, Assistant Attorney General (*Robert C. O'Grady, Samuel D. Spector,* and *William J. Vitale*, special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges; EKWALL, J., dissenting

KEEFE, Judge: This case involves the quantity of whisky upon which duty is properly assessable. The importation consists of bourbon and rye whiskies, each imported in 15 barrels. The importer makes various claims in the protest, none of them being waived, although the claim mainly relied upon is that "it is not right nor legal to assess duty upon merchandise which never arrived in this country and which never was imported." The collector assessed duty in accordance with article 817 of the Customs Regulations of 1931, at $5 per proof gallon, prescribed in paragraph 802 of the Tariff Act of 1930, upon the basis of the capacity of the casks, less 2½ per centum for normal outage, rather than upon the basis of the net quantity as invoiced, or entered, or as ascertained by the Government gauger. That is to say, the collector assessed duty upon the basis of 1,879.41 proof gallons, as determined from the capacity of the casks, less 2½ per centum, rather than upon the basis of 1,494.48 proof gallons, as returned by the gauger, or 1,420.17 proof gallons, as invoiced and entered.

From the invoice, the entry papers, and the record, we find that the whisky was exported by the Consolidated Distilleries, Ltd. It was invoiced at Montreal, Canada, on December 19, 1933, and shipped from Belleville, Canada, December 27, 1933. The whisky was entered by Kolmar, Inc., at Cincinnati, Ohio, January 4, 1934, and the testimony fully establishes that, both at the time the barrels were shipped and at the time of their receipt in Cincinnati, they were sound and in perfect condition and none of them showed any indication of breakage, leakage, or damage. Hearings were held at Buffalo and Cincinnati.

At the hearing in Buffalo, one George Drummond, a foreman blender and gauger for the Consolidated Distilleries, Ltd., testified for the plaintiff that he had charge of the gauging and weighing of the 30 barrels of whisky at issue, and he produced a packing list showing the results of his gauging and weighing operations, having attached thereto

two weight sheets in his own handwriting, from which the packing list had been compiled. The witness certified under oath that this packing list was correct and accurate and showed the results of what he personally did. Upon said packing list is written "Certified true copy of Record. W. H. Dillnutt Excise Officer." The witness testified that Mr. Dillnutt was an officer of the Canadian Government who was present and supervised the gauging and weighing of the 30 barrels of whisky and that he was able to recognize the signature upon the packing list as the signature of said excise officer. The documents were admitted in evidence as collective exhibit 5.

The witness further testified that the whisky was placed in bonded warehouse to age in April and May 1928; that he withdrew it from warehouse on December 12, 1933; that he determined the actual quantities of whisky contained in the barrels *by means of the weight method* in manner following: The whisky was emptied from the barrels into a round tank raised on Fairbank scales which were tested every morning and before every weighing; that after emptying the barrels they were tared by weighing each barrel on a Toledo platform scale 4 feet square, which also was tested every morning and before each operation; that after weighing the whisky it was tested for strength; that the gross weight as reported by him shows the weight of the container, plus the whisky, which was siphoned out of the tank into the barrel; that the tare weight is the weight of the empty barrel and the net weight is the weight of the whisky in the barrel; that after determining the gross, the tare, and the net weights, the barrels were examined by a cooper and then a piece of steel was used to seal the liquor in each barrel and the same was so sealed under the supervision of the excise officer; that the barrels were placed four barrels in a row on end in a freight car and braced by a carpenter in such a way that they would not move when the cars were shunted; that, after loading, the excise officer took his weighing sheet, checked the package number, the gross, the tare weight, and the net gallons and strength, marked on every barrel, to see that it corresponded with his weight sheet, and then, finally, the car doors were closed and sealed by the excise officer and the witness.

The witness testified further that in his experience the weight method of determining the quantity of liquor was more accurate than the rod method and that the weight method was used by his company and by the Canadian Government; that by the rod method there is a possibility of there being a mistake; that is, "when the man puts the rod in you have to allow for a wet dip and a dry dip, and the thickness of the stuff where the bung comes" (record page 40), whereas in the weight method you have the actual weight of the liquor.

Concerning the wantage in the barrels, the witness testified that the purpose of putting whisky in barrels is to age it, and in the course

of time there is a natural shrinkage; that it may shrink as much as 8 per centum the first year; 6 per centum the second year; 4 per centum the third year; 3 per centum the fourth year, and another 2 per centum up to 15 years; that the Canadian Government makes allowances to his company for evaporation of whisky after it has been barreled; that as these particular barrels had been in storage more than 5 years there was a natural shrinkage in the contents; that, at the time of weighing, the barrels were about two-thirds full and after weighing he put back the liquor he had taken out and did not fill the barrels to capacity because the customer asked that they be shipped that way on account of desiring the cooperage.

In collective exhibit 5, the weight sheet of the shipper indicates the gross, tare, and net weights of each barrel, also the imperial gallons and Sikes proof gallons, as well as the American wine gallons and American proof gallons. The total of the American rye whisky shipped is shown as 600 American wine gallons, equal to 706.50 American proof gallons. The total of the American bourbon whisky is shown as 618.6 American wine gallons, equal to 713.67 American proof gallons. The proof gallons shown upon the weight sheet agree with the unit of quantity upon the consular invoice.

The merchandise appears on the invoice as follows: "15 barrels Bourbon Whiskey 1928 Manufacture"; marks and numbers, "Kolmar Inc. Nos. 326–340 Inc."; manufacturer's numbers, "Bond Nos. 245–5–28"; quantities "618.6 Wine Gallons 713.67 American Proof Gallons @ 4.38 per American Proof Gallon" (Canadian currency); and as "15 Barrels American Rye Whisky 1928 Manufacture"; marks and numbers, "Kolmar Inc. Nos. 319–333 Inc."; manufacturer's numbers, "Bond Nos. 107–4–28"; quantities—"600 American Wine Gallon 706.50 American Proof Gallon @ 4.38 per American Proof Gallon" (Canadian currency).

At the hearing in Cincinnati the United States customs gauger testified for the plaintiff that his gauging of the whisky was performed in the bonded section of the Cincinnati terminal warehouse on January 5, 1934, by means of the rod method of gauging; and that on the basis of his figures shown in his dock book, prepared and completed on January 12, 1934, admitted in evidence as exhibit 1, he found in barrels B 326 to 340, 750.90 proof gallons and in barrels D 319 to 333, 743.56 proof gallons, or a total for the 30 barrels of 1,494.48 American proof gallons.

The witness testified further that the barrels were the ordinary 50-gallon whisky barrels and were all in good order; that upon each barrel there were stenciled a gross weight, a net weight, and a tare weight, together with the wine- and proof-gallon content; that the barrels were from 75 to 80 per centum full; and that at the period this whisky was gauged he was compelled under the regulations to use the

rod method of gauging. To find the capacity by that method, calipers are used to measure the length of a barrel and a rod to ascertain the head diameter; that, upon determination of the capacity, the barrels were opened to determine the actual outage, that is, what portion of the barrel is not filled, and also to obtain a sample for purposes of determining the true proof; that the capacity, less the outage, shows the *apparent wine gallons* in each individual barrel; that a gauger makes his return irrespective of any packing list or any invoice; and that when the particular whisky in question was gauged by him he did not have before him either the invoice or the packing list, although from official information before him he knew that such packing list was before the liquidator at the time of liquidation.

The witness testified also that in the rod method of gauging a great deal is left to the individual judgment of the gauger in determining which of three varieties of barrels is before him, and a question as to the precise character of the barrel often arises even in the individual gauger's mind; that he has to decide whether it is of the first, second, or third class, and when he makes his decision he stands on it; that, after deciding the class of barrel before him, the capacity is determined by the use of the scale for either the first or second, or the third variety, as the case may be, and also, if a barrel is not level on the floor, any finding would be inaccurate. According to the witness, gauging by the weight method is merely taking the gross weight and ascertaining the tare weight and the difference would be the net weight of the whisky in the barrel; that under present regulations the weigher is offered several alternatives in determining the tare weight, such as pouring out the contents and actually weighing the barrels net, or estimating the tare weights from the actual determination of a certain percentage of the importation. The testimony of the witness as to the accuracy of the weight method over the rod method was excluded upon objection of the Government. If there was error in this ruling, we think the same was harmless for the reason that the witness on cross-examination indicated his belief that the weight method was more accurate than the rod method.

The customs gauger's weight book, exhibit 1, discloses the measurements and findings of capacity and the wantage or outage and the determination therefrom of the *apparent wine gallons* per barrel. To the *apparent wine gallons* in each barrel a half gallon is added in each instance to correct the volume for temperature so that the net wine gallons reported are a half gallon per barrel higher than the gallonage determined or estimated by the measurement of the barrels. The temperature is reported in all instances to be "41." The "true percentage of proof" in barrel D-319 is reported as "117.4" and in barrels D-320 to D-333, as "118.3." Hydrometer indication was "110" for barrel D-319, and "111" for barrels D-320 to D-333. For barrels

B–326 to B–340 the hydrometer indication was "108" and the true proof "115.4." Exhibit 5 indicates that the shipper's gauger made the same readings for barrels B–326 to B–340, but for barrels D–319 to D–333 the readings are reported as "117.8." A comparison with the packing list or specifications discloses that the Government gauger found from 1.10 to 4.84 proof gallons more whisky in each barrel than was shown upon the specifications for the individual barrel. This packing list, according to the Government gauger, was before the liquidator at the time of liquidation.

The pertinent portions of the Tariff Act of 1930 provide as follows:

PAR. 802. Brandy and other spirits manufactured or distilled from grain or other materials, cordials, liqueurs, * * * $5 per proof gallon.

PAR. 813. There shall be no constructive or other allowance for breakage, leakage, or damage on wines, liquors, cordials, or distilled spirits, except that when it shall appear to the collector of customs from the gauger's return, verified by an affidavit by the importer to be filed within five days after the delivery of the merchandise, that a cask or package has been broken or otherwise injured in transit from a foreign port and as a result thereof a part of its contents, amounting to 10 per centum or more of the total value of the contents of the said cask or package in its condition as exported, has been lost, allowance therefor may be made in the liquidation of the duties.

PAR. 815. The Secretary of the Treasury is hereby authorized and directed to make all rules and regulations necessary for the enforcement of the provisions of this schedule.

The regulations of the Secretary of the Treasury, so far as pertinent, as appearing in the Customs Regulations of 1931, provide as follows:

Art. 817.   Definitions—Outages.

*         *         *         *         *         *         *

(d) "Contents in condition as exported" is held to mean the invoiced quantities, provided specifications are given for each individual package, otherwise the "contents exported" shall be held to be the gross capacities returned by the gauger.

(e) Outages not within the scope of the preceding subdivisions of this article by reason of being under 10 per cent or not being the kind of loss provided in the law, or by failure to file timely affidavit, will be subject to an allowance of 2½ per cent for normal outage from the capacity as shown by the gauger's return or the invoice quantity, according to the circumstances.

The plaintiff contends that it is not lawful to assess duty under these particular circumstances upon the basis of quantity represented by the full capacity of the casks, less 2½ per centum, particularly where it has been established beyond doubt that the quantity shipped and the quantity imported into this country was substantially less than the basis of quantity so used by the collector; and that the provisions of paragraph 813 are not applicable because the barrels are sound and were not broken, leaking, or damaged. The plaintiff further argues that the case of *Park & Tilford* v. *United States*, 9 Ct. Cust. Appls. 53, T. D. 37906, is not controlling for the reason that there the barrels of aged-in-the-wood whisky were of different kinds, to wit, some contained less liquor than invoiced, some contained more

liquor, and in others the contents were not declared on the invoice, while here the quantity shipped was definitely established; that the barrels in that case were exported from Scotland and subject to the rigors of the voyage, here they merely came across the border; that the barrels there were not gauged in the country of exportation before shipment as in the case of the barrels before us and there was no evidence presented in that case of the barrels being intentionally ordered to be shipped only partially filled with liquor, as in the case here presented; and that while it was not established in that case there had not been any loss in transit from a foreign port, here the evidence indicates that the quantity shipped was the quantity imported. Counsel for the plaintiff, in addenda to his brief, asks the court of its own motion to admit in evidence here the weight gauge report of Mr. McCarthy, plaintiff's exhibit 2 for identification. Plaintiff was unable to obtain the testimony of Mr. McCarthy relative to said weights appearing on exhibit 2 and therefore it was not admitted at the trial and is not in evidence. We cannot consider it here.

The Government contends that the collector was justified in assessing duties on the gross capacity of the barrels, as returned by the Government gauger, less 2½ per centum normal outage, because, under the consistent holdings of the courts, duty must be assessed upon the full capacity of the packages when the contents of each individual package is not specified on the invoice, citing *Park & Tilford* v. *United States, supra*. The Government argues that it is manifest from the court's decision in the *Park & Tilford* case, *supra*, "that the only finding of the court which was a necessary factor to the decision was the absence of separate invoicing of the contents of each individual package, as provided for by the Customs Regulations." Cited also in support of such argument is *Canadian Bank of Commerce* v. *United States*, 73 Treas. Dec. 686, T. D. 49519, and *Joseph E. Seagram & Sons, Inc.* v. *United States*, 8 Cust. Ct. 166, C. D. 598. (Reversed in C. A. D. 227, 30 C. C. P. A. (Customs) 150) on the basis of invoice quantity. The Government points out that paragraph 813, *supra*, providing there shall be no allowance for breakage, leakage, or damage on distilled spirits, has been held to be constitutional, citing in that regard *Park & Tilford Import Corp.* v. *United States*, 26 C. C. P. A. 342, C. A. D. 38. Notwithstanding the fact that the record here fails to show, nor does the plaintiff claim, any loss in quantity while the whisky was in transit from a foreign port, the Government contends that duty is assessable upon the involved importation on the "contents in condition as exported," and this fact would be true even if the barrels were found to contain a quantity less than that declared in the invoice.

We are in accord with the Government's contention that duty is assessable upon the involved importation upon the basis of the

"contents in condition as exported." The regulations governing the enforcement of the provisions of paragraph 813 are predicated upon the assumption that the law provides that duty shall be levied upon wines, liquors, cordials, and distilled spirits upon the basis of their exported quantities. Therefore the "contents in condition as exported" is held to mean the invoiced quantities. Where the collector is in doubt as to the exported quantities as evidenced by the invoice because of a lack of specifications of the contents of each barrel accompanying the invoice, or where the gauger finds more liquor than the invoice calls for and there still remains an abnormal outage, the collector is directed to base his assessment of duties upon the capacity of the casks less a normal outage of 2½ per centum. The collector's action in assessment of duty upon such basis has been held to be legal and the regulations constitutional. The Government, however, in relying upon the decisions cited, overlooks the fact that all of those cases were decided upon a record containing no facts additional to such as were before the collector. In each instance the importer was unable or failed to establish the quantities shipped. In the case before us, however, the importer not only has established the exact quantities of whisky shipped in each barrel, but the specifications showing the quantities in each barrel are before us and, in addition to that, the evidence further shows that either the specifications or packing list showing the contents of each barrel was before the liquidator at the time of liquidation.

According to brief of Government's counsel, reliance is placed largely upon the earlier *Park & Tilford* case, *supra*, on account of the statement appearing in the decision reading as follows:

\* \* \*. It is prescribed by the tariff act (par. C., sec. 3), administrative provisions, that all invoices of imported merchandise "shall contain a correct, complete, and detailed description of such merchandise and of the packages, wrappings, or other coverings containing it." *It is certainly no forced application of this provision to require an importer of liquor in casks to declare in the invoice the correct quantity in each cask at exportation.* In fact, it is difficult to see how the provisions of paragraph 244, supra, can be enforced or applied without such a declaration of quantity in the invoice. *If an importer of liquor fails to make such a declaration in his invoice, or makes an incorrect one therein, he can have no right to complain if the reported capacity of the containers be accepted by the collector as the quantity in them at the time of exportation.* It is equally clear that the importers in this case can not claim exemption from the duty of correctly declaring in the invoice the quantity shipped in the casks, because of the inconvenience of gauging their casks before shipment, or the danger of blending which would result from that operation. The fact that the procedure prescribed by the foregoing regulations may result in assessing duty upon a larger quantity of liquor than is found in the casks at importation does not condemn the rule as unconstitutional. It may be observed that in paragraph 244, supra, Congress has provided that liquors imported in bottles shall be packed in packages containing not less than 1 dozen bottles in each package, or duty shall be paid as if such package contained at least one dozen bottles. This provision has been sustained by the courts, although it results in given cases in assessing importations of liquor at a greater quantity than actually imported.

See Aurola *v.* United States (2 Ct. Cust. Appls. 340; T. D. 32077) and authorities therein cited. In fact, paragraph 244, supra, is founded upon the view that where importations of liquor arrive in this country duty may be assessed upon them at a larger quantity than that actually imported, in cases wherein the regulations governing such importations have not been obeyed.

According to the Treasury regulations, therefore, *the collector was justified in finding that at the time of shipment the casks in question respectively contained a greater quantity of liquor than at the time of their arrival in this country, and that the shortage had not occurred from such causes as should be allowed for in view of the prohibitions of paragraph 244, supra.*

\* \* \* \* \* \* \*

We are therefore of the opinion that the collector's assessment was lawful, and that the decision of the board sustaining it should be affirmed. [Italics not quoted.]

The appellate court in the foregoing statement was applying article 613 of the Customs Regulations of 1915 defining "contents in condition as exported" (to wit, the invoiced quantities, provided specifications are given for each individual package) to the facts in that case, where, in some instances a consular invoice was apparently not supplied, and apparently there were no specifications for each individual package. The court cited the administrative provisions correlative to section 481, act of 1930, as to the required invoice contents, and, it seems to us, did not make clear in its decision that there was a difference between the invoice requirements of quantity and the specifications of invoiced quantities, as the court must have been fully cognizant of the fact that an importer could not make a declaration *in his invoice* of the quantity, and therefore must have been referring to specifications filed in connection with the entry by the importer. The invoice declaration, of course, is made by the shipper before the American consul. However, the Secretary of the Treasury is given authority in section 484, to provide for such facts in regard to the importation as may be required to secure a proper liquidation of the entry, such as a detailed enumeration of the kinds and quantities of the merchandise imported. In article 817 (*d*), *supra*, specifications of quantities contained in each barrel are required in case the importer desires duty to be assessed upon a quantity other than the capacity of the barrels, less 2½ per centum. These specifications are filed by the importer at such time as required by the collector.

.As heretofore stated, the evidence in the case at bar discloses that such facts as to the contents of each barrel upon exportation were before the liquidator at the time of liquidation of the liquor in question. We therefore are of the opinion that any question of improper invoicing or failure to meet the entry requirements in respect to the importation of liquors that may have been before the court in the *Park & Tilford* case, *supra*, is not before us in this case. In truth, improper invoicing does not preclude this court from ascertaining the facts upon which such claim was based.

The *Park & Tilford* case, although in many respects similar to the case at bar, is not of such similarity as would preclude a finding upon the merits by this court. There certain of the casks were found by the Government gauger to contain more liquor than the invoice called for. In this respect it is the same as the question before us here. There also the collector ignored the invoice statement and assessed duty upon the capacity of each cask as found by the gauger, less allowance for normal outage. Also, the importers there contended, as in this case, that the collector should have assessed duty only upon the actual contents of the casks as reported by the gauger, and any intention of founding their protest upon an allowance for breakage was disclaimed. However, in its opinion the court quotes from the importers' brief as to the circumstances governing the quantities of liquor in the casks in language following:

The importations are all straight whiskies which have aged in the casks for years before their purchase abroad. As they age, the liquor evaporates. The casks are never opened, as the opening would allow an opportunity to blend.

The exact amount of evaporation is not always rightly computed. As a result, there was a difference of a few gallons, and in some cases fractions of gallons, in the amount stated in the invoice and the amount found by the gauger.

It is apparent therefore that the whisky in that case was not purposely exported in partially filled barrels as in the case at bar. The court also pointed out in that case that no testimony was offered by either side. Here we have uncontradicted testimony establishing that the barrels were purposely partially filled and that in each of the barrels a certain specified quantity of whisky was placed. This distinction bars the *Park & Tilford* case as a precedent to be followed blindly here.

The record in that case also disclosed that the assessment of duty was made in each of the disputed instances upon greater contents than were actually found in the casks by the gauger upon importation, and that the method of assessment was authorized by the Treasury regulations. After quoting the regulations, which were the same as quoted above, the court stated:

As appears from the foregoing regulations the department adopted the view that Congress, in enacting paragraph 244, *intended to prohibit all actual or constructive allowance for outage or wantage in importations like the present*, except only where a cask or other package has been broken or otherwise injured while in transit, in which case an allowance for the loss shall be made when the facts appear according to certain prescribed requirements.

* * *. These regulations explicitly require that in the absence of such leakage as may be allowed for under the proviso to paragraph 244, supra, the collector shall base the assessment upon the invoice quantity, less 2½ percent normal outage, where that is greater than the actual quantity found by the gauger, and *that in cases where the invoice quantity is less than that found by the gauger * * * the invoice shall be disregarded and the assessment based upon the capacity of the casks reported by the gauger, less 2½ percent for normal outage.* [Italics not quoted.]

144

The *Aurola* case, cited by the appellate court, involved an alleged error of the collector in refusing to allow for leakage of wine. The duty was assessed on the amount found by the United States gauger, plus wantage in excess of normal outage, which, in effect, is the same as assessing duty upon the capacity of the casks less normal outage. The court cited *Marriott* v. *Brune* (9 How. 619) holding that the collection of revenue on an article not existing, and never coming into the country, would be an anomaly and is not to be countenanced *where not expressed in acts of Congress*, and also *Lawder* v. *Stone*, 187 U. S. 281, where the Supreme Court, in referring to the foregoing decision, stated that "it would require a clear expression by Congress of its intention to adopt a contrary policy, before a court would be justified in holding that such was the purpose of the legislative branch of the government," that is, to assess duties upon goods not actually imported. It was held that these decisions were consistent with the decision of the court in upholding the action of the collector in taking duty upon liquor never imported, citing as authority *United States* v. *Shaw*, 144 Fed. 329, T. D. 27226, where the Circuit Court of Appeals, Second Circuit, in a *per curiam* decision by Wallace, LaCombe, and Coxe, Circuit Judges, quoted the decision of the Board of General Appraisers, Somerville, General Appraiser, writing the opinion, and approved the same, reversing the Circuit Court for the Southern District of New York where it was held that the power to collect duties given Congress by the Constitution implies that there must be some article imported on which such duty is imposed.

According to the decision written by Judge Somerville, the importation there consisted of barrels from which the liquor contained therein, when exported, had entirely leaked out and also of barrels containing a substantial quantity of liquor. The invoice or entry showed the quantity originally shipped. The gauger reported the outage "in excess of normal" which he stated "would indicate leakage." The collector assessed duty upon the quantity of liquor found by the gauger plus the wantage in excess of normal outage, the assessment being made in accordance with instructions of the Treasury Department. Upon the empty casks the collector assessed duty upon the quantity of wine stated in the invoices less the deduction for normal outage. The importers claimed that duty should have been assessed only upon the quantity of liquors and wines which arrived in this country as shown by the gauger's return. Judge Somerville reviewed the history of the provision, pointing out that when it had read: "no allowance for breakage, leakage, or damage on wines, liquors, cordials, or distilled spirits" the Attorney General expressed the opinion that the proviso permitted duties to be assessed only on the quantity of merchandise actually imported, but since that time the proviso had

bcen materially changed and in the Tariff Act of 1897 it read: *"no constructive or other* allowance for breakage, leakage or damage on wines, liquors, cordials or distilled spirits." As to this changed wording, it is stated in said decision as follows:

\* \* \*. The words *"constructive allowance,"* thus introduced into the law, *would seem to imply an allowance for a leakage which may be presumed or implied, or which would exist in contemplation of law, rather than an allowance for an actual leakage established by affirmative proof.* \* \* \*. It is no reasonable objection to this construction of the law that it operates to assess duty arbitrarily upon goods which never arrived in this country. \* \* \*. The same reasoning applies in favor of the validity of a law which arbitrarily disallows any reduction of duties for loss by breakage, leakage, or other damage.

\* \* \*. *We are of opinion that, where the quantity of wine or liquor shipped from the port of origin is described on the invoice as so many gallons or liters as required by law, the collector is justified in assuming that such quantity was shipped.* Invoices are sworn documents and presumably are correct. \* \* \*. *The rule being also settled that there is a presumption in favor of the correctness of a collector's decision in assessing duties on imported merchandise, unless controverted by the record or other evidence, we think the onus was on the importers in the present cases to furnish some evidence to rebut the legitimate assumption that the reduction in the quantity shipped was attributable to no other causes than leakage.* The disappearance of so great a quantity from the casks is not easily explainable on any other theory.

We decide nothing as to cases where, by neglect or otherwise, there is nothing in the invoice or entry to indicate the quantity in the casks when shipped from abroad *and where there is no other evidence to supplement proof of this fact.*

\* \* \* \* \* \* \*

\* \* \*. It is not necessary for us to justify Congress in enacting a law of this character, but its policy was no doubt suggested by the practical difficulty of proving whether leakage of this kind occurred in transit before arrival, or after arrival while on shipboard, or on the wharf before delivery, or in the storehouse of the importer after he received his goods, or while in a bonded warehouse. If any other rule existed, a vast multiplicity of suits of most difficult determination would arise in cases of this kind. [Italics not quoted.]

In a recent case, *Seagram* v. *United States,* 30 C. C. P. A. 150, C. A. D. 227, the court had before it a situation similar to the case at bar. There also the barrels were purposely partially filled with whisky and inquiry was made of the Treasury Department officials to ascertain if whisky in barrels could, under the law, be so imported. Upon receiving an affirmative reply, a large quantity of whisky was imported from Canada in partially filled barrels. After entry in the United States a gauge was made by means of the rod method and report was made to the collector that the barrels contained more liquor than shown upon the invoices. Thereupon the collector disregarded the quantity reported by the United States gauger and assessed duty upon the gauger's report of capacity of the casks less normal outage. Various contentions were made by the plaintiff including an attack upon the accuracy of the customs gauge because proper gauging methods, as prescribed by the Customs Gaugers' Manual, were allegedly not

followed. This court held that the whisky was gauged in accordance with law and inasmuch as the importer had failed to establish that the gauge made by the customs gaugers was inaccurate the plaintiff was not entitled to relief in the absence of establishing the quantity imported. Upon appeal, however, our appellate court held that the customs gaugers had not gauged the whisky in accordance with law and such gauge as was reported by the gaugers was null and void, the court stating:

It is clear that the issue here involves neither classification nor appraisement. It merely concerns quantity. It is more analogous to appraisement proceedings than to proceedings in classification. * * *.

There is nothing in the record impeaching or discrediting the invoices. Presumably the only reason that the collector made the assessment upon capacity was because the gaugers' returns showed larger quantities than those shown in the invoices, but inasmuch as the gaugers' returns were void for the reasons hereinbefore stated there was nothing before the collector challenging the invoices. Therefore, in our opinion, the proper quantity of whisky upon which duty should be levied must be that quantity contained in the invoices.

"Based on the evidence of the invoices" the whisky was held properly assessable for duty upon the amounts set out therein. It is of interest to note in that case that even though the importers failed to establish by affirmative proof the quantity of liquor exported as the invoice quantities, the court accepted the invoices as being of some evidentiary value as to the quantities shipped. It is a notable fact, however, that the consular invoices in that case were comparable to the consular invoices in the case here before us. The specifications upon which the court held the collector should reliquidate the entries were not a part of the consular invoices but were presumably filed in connection with the entry or at some time before liquidation, as in the case at bar, and were a part of the invoice and entry papers before the court.

Under authority of the *United States* v. *Shaw, supra,* and *Seagram* v. *United States, supra,* affirmative proof may be presented before the court establishing the quantity of whisky shipped, and that such evidence of the actual quantity shipped is to be used as the basis for the assessment of duties rather than the basis used by the collector when, under the regulations, he is unable to find a quantity acceptable to him as the exported quantity.

From the foregoing review of the law it seems to us well settled that it was the purpose of Congress in enacting paragraph 813, *supra,* to authorize the assessment of duty on liquors upon the basis of the exported quantity and not to grant an allowance for any loss, either actual or constructive, in such quantity except through breakage, leakage, or damage occurring by reason of a cask or package being broken or otherwise injured in transit from a foreign port, and then only when the importer has complied with the provisions attending

such grant of allowance. In case of loss through breakage, leakage, or damage by reason of a cask or package having been broken or otherwise injured in transit from a foreign port, and where 10 per centum or more of the total value of the contents of said cask or package in its exported condition has been lost, the methods of recovery cited in paragraph 813, and the regulations promulgated pursuant thereto, are mandatory upon the importer and become conditions precedent to recovery. However, in cases where the loss is *constructive*, that is to say, that because of an abnormal wantage in the barrels, the collector may presume that such wantage was due to leakage from the exported quantity, under the *Shaw* case, *supra*, the onus is on the importers to furnish some evidence to rebut the legitimate assumption by the collector that the reduction in quantity from the capacity of the casks was attributable to no other causes than leakage. In all cases called to our attention of "constructive" loss, including the *Shaw* and *Park & Tilford* cases, *supra*, the importers failed to establish that the quantity imported was actually the quantity shipped and that the collector was erroneous in his assumption that there had been a loss in quantity upon the voyage.

The case before us, however, is distinguishable from all previous cases. Here the importers have established without contradiction that the exported quantities of liquor were the invoiced quantities and that the method of determining the quantity as used by the exporter was conducive of more accurate results than the method used by the Government gauger. The United States gauger at Cincinnati testified that it was his duty to find the amount of liquor contained in the barrels by gauging the same. This he found and reported said amounts to the collector as shown by exhibit 1, his dock book. He further testified that it was his duty and he did report the capacity of the barrels to the collector. The collector, acting upon his report and upon the papers before him, under the regulations, may have been justified in assessing duty on the capacity of the barrels less normal outage of 2½ per centum. However, it has been established before us that the exact amount of liquor exported, as determined just prior to exportation, was the amount named in the consular invoices and in the entry of the merchandise. It has been further shown, as heretofore stated, that the weight method of gauging is more accurate than the rod method. The Government gauger evidently did not find the correct quantity by means of the rod method of gauging. He admitted himself that that method was not as accurate as the weight method and that the other witness testified that the weight method was far more accurate. We are of the opinion that the invoiced and entered quantities of the liquor in question are the quantities to be used as a basis for determining the duties. In so holding, however, we do not intend to hold that it is not lawful for the collector to assess duty

upon the basis of quantity represented by the full capacity of the casks, less 2½ per centum, as required by the regulations; that the provisions of paragraph 813 are not applicable to the importation in question; or that the case here would be distinguishable from the *Park & Tilford* case, *supra*, were not the evidence of such nature that the court is able therefrom to determine the exported quantities.

In the case of *Oldetyme Distillers, Inc.* v. *United States* (13 Cust. Ct. 127, C. D. 883), decided concurrently herewith, the whisky contained in the barrels, as in the case at bar, was far less than the capacity of the barrels. There the whisky had been shipped from the United States only a short time before reimportation and it had been gauged at the time of exportation by the Government gaugers. The ·customs officials actually knew the quantity at. that time. Upon the return of the identical whisky, for which there was no invoice because the whisky was not admitted into the country to which it had been shipped, the collector, under the regulations, assessed duty upon the basis of the capacity of the casks, less 2½ per centum for outage. Clearly, it was within his knowledge, as evidenced by the papers, that when shipped from abroad there was no such quantity of liquor in the barrels and that the wantage in the barrels was not due to breakage, leakage, or damage since exportation of the same from abroad. Manifestly, therefore, in assessing duty upon the basis of the capacity of the barrels less normal outage, the collector arbitrarily took advantage of his powers under the law in assuming that the wantage shown by the customs gauger's report of the entered gauge was attributable to leakage. However, in the absence of evidence to establish the actual quantity exported, this court was constrained to sustain such arbitrary action of the collector in assessing duty upon the basis of the capacity. Because of such lack of evidence in that case, it is clearly distinguishable from the case now before us.

For the reasons stated, judgment will be rendered in favor of the importer directing the collector to reliquidate the entry and make refund of all duties taken upon quantities in excess of the invoiced and entered quantities.

### DISSENTING OPINION

EKWALL, J. I am unable to agree with the finding of the majority in this case. The sole issue presented, it seems to me, is whether the collector erred in refusing to grant the allowance claimed under paragraph 813 of the Tariff Act of 1930. The legality of the assessment under said paragraph 813 has been passed upon by this court and the court of appeals on many occasions and has become *stare decisis*. In *United States* v. *Shaw*, 144 F. ·329, the United States Circuit Court of Appeals, Second Circuit, held that a similar provision in the Tariff Act of 1897 (paragraph 296) was a valid and reasonable exercise of the legislative power to regulate imports.

I think the language used in the case of *Cataldi Aurola et al.* v. *United States*, 2 Ct. Cust. Appls. 340, T. D. 32077, where the court was considering the correlative provision in an earlier act (paragraph 307 of the act of 1909), expresses the reason for the inclusion of the proviso prohibiting constructive allowance as found in the revised statutes and in various tariff enactments. The court said (p. 341):

The provision we are now considering is an administrative provision that was evidently designed to prevent fraud and for convenience in the administration of the customs laws.

The provision of the statute here under consideration, viz, paragraph 813, *supra*, clearly sets forth the conditions precedent to the granting of a constructive allowance for leakage on distilled spirits. I find nothing in the instant case as presented which would cause this court to depart from the finding of this division in the case of *Canadian Bank of Commerce* v. *United States*, 73 Treas. Dec. 686, T. D. 49519, which was in conformity with the law, the regulations promulgated thereunder, and the decisions.

I can see no hardship in the requirement of the regulation that the invoice shall contain a declaration of the contents of the casks. The record before us shows that the importer received a tabulated statement of the contents of each of the barrels here involved. Surely such statement could have been made part of the consular invoice in order that the importer might take advantage of the allowances provided for in the statute and regulations.

As I view the case this court is bound by the decision in *Park & Tilford* v. *United States*, 9 Ct. Cust. Appls. 53, T. D. 37906, and the plaintiff herein having failed to comply with the requirement as to the invoice declaration of the contents of the casks, the collector had no alternative than to assess duty upon the capacity of the casks less 2½ per centum.

I think plaintiff's claims should be overruled.