(C. D. 935)

SHERBROOK DISTRIBUTING CO. *v.* UNITED STATES

United States Customs Court, Third Division

(Decided June 27, 1945)

*Tompkins & Tompkins* (*J. Stuart Tompkins* of counsel) for the plaintiff.
*Paul P. Rao,* Assistant Attorney General (*Samuel D. Spector* and *Arthur R. Martoccia,* special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

KEEFE, Judge: The importation before us consists of rye and bourbon whiskies each in 30 barrels. The plaintiff claims that excessive duties or taxes were collected upon the whiskies because a greater quantity than imported was used as the basis of the collector's calculations. Various additional claims were made in the protest, none of them being waived.

The invoice and entry papers disclose that duty was assessed upon the whiskies at the rate of $5 per proof gallon, under paragraph 802, Tariff Act of 1930, upon the basis of the capacity of the casks, less 2½ per centum for normal outage, rather than upon the basis of the net quantity as invoiced or entered, or as ascertained by the Government gauger.

The quantities shown on the invoice are as follows: 1,300.15 proof gallons of rye and 1,409.07 proof gallons of bourbon, together equalling 2,709.22 proof gallons. The Government gauger reported 1,376.87 proof gallons of rye and 1,486.38 proof gallons of bourbon, a total of 2,863.25 proof gallons, and an excess of 154.03 proof gallons over the

invoiced quantity. The collector, however, based the duty upon the capacity of the casks, less 2½ per centum for outage, to wit, 1,889.17 proof gallons of rye and 1,915.02 proof gallons of bourbon, a total of 3,804.19 proof gallons or 1,094.97 proof gallons of whisky in excess of the exported quantity.

The invoice and entry papers further disclose that the whiskies were exported by the Consolidated Distilleries, Ltd., of Montreal, Canada, from its distillery at Belleville on January 18, 1934, and were entered under an immediate transportation entry at Port Huron on January 20. The whiskies were regularly entered by the plaintiff on January 24, 1934, 6 days after shipment. Attached to the invoice and entry papers as forwarded by the collectors to the court is a "packing list" bearing a notation upon the bottom thereof as follows: "This Packing List forms part of Consular Invoice No. 373." Upon this list appears the number of each package, the gross weight, the tare weight, and net weight thereof, and also the quantity of American wine gallons and American proof gallons contained in each package. Two "Detail Lists" also attached to the entry papers show the specifications of contents of the rye and the bourbon whiskies.

At the trial George Drummond, foreman blender and gauger for the Consolidated Distilleries, Ltd., and Clifford H. Petersen, deputy collector in charge of the port of Cincinnati, who, at the time of this importation, was the gauger of the whiskies in question, testified on behalf of the plaintiff, also the plaintiff's representative who purchased the whiskies in Canada. Witnesses Drummond and Petersen testified in the case of *Kolmar, Inc.* v. *United States*, 13 Cust. Ct. 134, C. D. 884, relative to an importation of whiskies wherein the issue was on all fours with the question here presented. Their testimony in this case is substantially the same as in the *Kolmar* case. It is established here, as in the *Kolmar* case, beyond any question of doubt, that the 60 barrels of whisky were purposely filled approximately three-quarters full of whisky; that the whisky had been in the Canadian warehouse since 1928 and because of normal shrinkage during that period the barrels were only partly full; that in order to obtain the quantities of whisky in each of these barrels they were emptied into a tank attached to a scale and the whisky contents were weighed in the presence of a Canadian excise officer, who certified to the findings; the empty barrels were weighed individually; the whisky after weighing was returned to the barrel so that each barrel was approximately three-quarters full; and then each barrel with its contents was weighed. The gross weight, the tare weight, and the net weight were stenciled on each barrel. There also appeared stenciled thereon the number of the barrel, the quantities of American wine gallons, and American proof gallons comprising the contents, and such stenciled portion corresponded to the data on the packing lists.

Witness Drummond testified that the weight method of gauging which he used to obtain the exported quantities was much more accurate than the rod method of gauging. This was substantiated by the Government weigher, who testified that he used the rod method of gauging because that was in accordance with the regulations at the time of gauging, and in his opinion the weight method of gauging was much more accurate because the barrels are not perfect cylinders and there is a lot of room for error, whereas in the weight method, regardless of irregularities, the weight will be the same.

The plaintiff's representative testified that he had purchased the whiskies in question and had instructed the shipper to forward the barrels in their partly filled condition as he desired to have the original aged-in-the-wood barrels; that outside of obtaining additional cooperage because of the shortage of barrels in the United States, the partially filled barrels were desired because, under Government regulations, an importer of whisky is prohibited from claiming age for whisky unless it is the original aged-in-the-wood whisky. The witness further testifies that the 60 barrels of whiskies cost $11,866.38 for 2,709.22 gallons at the rate of $4.38 per proof gallon, as shown on the invoice, and such was the sum he paid for the same.

The three witnesses for plaintiff were unanimous in testifying that the barrels were perfectly sound and in good condition at the time they were shipped from Canada and received in the United States. In fact, there is no conflict of testimony, and all were agreed there was an absence of breakage, leakage, or damage. Nor does the plaintiff contend for an allowance, constructive or otherwise, because of any loss from such causes.

The documentary evidence admitted at the trial consists of collective exhibit 1, a packing list dated January 17, 1934, certified as a true copy of record by the Canadian excise officer, and the original weight sheets showing the penciled figures made at the time of weighing by witness Drummond. Exhibit 2 is the Canadian entry for export, noting the quantities exported, and that said packages were checked and sealed in car No. C. V. 83471 on January 17, 1934, by an officer of the National Revenue. Exhibits 3 and 4 consist of copies of the weigher's report to the collector of the gauge by the rod method of the whiskies in question. Exhibit 5 is a copy of the immediate transportation entry, showing that the shipment left Belleville on January 18, arrived at Port Huron on January 19, and was entered for transportation on January 20, 1934. Exhibit 6 is the dock book used by Mr. Petersen to record his findings in measuring the barrels by the rod method.

It was stipulated and agreed between counsel for the parties hereto as follows:

* * * that a Packing List pertaining to the 60 barrels of Whiskey in suit, such as the one which constitutes a part of Collective Exhibit 1 herein, was before

the liquidator at the time Warehouse Entry No. 70, covered by said protest, was liquidated September 22, 1934.

The plaintiff contends that it is not lawful to assess duty upon the full capacity of the casks, less 2½ per centum, when the quantity actually contained in the casks was the quantity ordered, the quantity shipped, and the quantity the importer paid for.

The Government contends that the collector was justified in assessing duties on the gross capacity of the barrels, as returned by the Government gauger, less 2½ per centum for normal outage, because the detailed specifications were not attached to the entry and that submission to the collector after entry was immaterial; that the Government is compelled to conduct its gauging without benefit of the specifications and its findings should be binding on the importer; that the decision in the *Kolmar* case is fundamentally erroneous, being an abrogation of the customs regulations promulgated under authority of paragraph 815, which at the time of importation required that the contents of casks and barrels be ascertained by the rod method of gauging; and that since the detailed specifications were not submitted on entry, the gross capacities constituted the proper basis for assessment of duty.

The pertinent portions of the Tariff Act of 1930 provide as follows:

PAR. 802. Brandy and other spirits manufactured or distilled from grain or other materials, cordials, liqueurs, * * * $5 per proof gallon.

PAR. 813. There shall be no constructive or other allowance for breakage, leakage, or damage on wines, liquors, cordials, or distilled spirits, except that when it shall appear to the collector of customs from the gauger's return, verified by an affidavit by the importer to be filed within five days after the delivery of the merchandise, that a cask or package has been broken or otherwise injured in transit from a foreign port and as a result thereof a part of its contents, amounting to 10 per centum or more of the total value of the contents of the said cask or package in its condition as exported, has been lost, allowance therefor may be made in the liquidation of the duties.

PAR. 815. The Secretary of the Treasury is hereby authorized and directed to make all rules and regulations necessary for the enforcement of the provisions of this schedule.

The Customs Regulations of 1931, so far as pertinent, provide as follows:

Art. 817. Definitions—Outages.

* * * * * * *

(d) "Contents in condition as exported" is held to mean the invoiced quantities, provided specifications are given for each individual package, otherwise the "contents exported" shall be held to be the gross capacities returned by the gauger.

(e) Outages not within the scope of the preceding subdivisions of this article by reason of being under 10 per cent or not being the kind of loss provided in the law, or by failure to file timely affidavit, will be subject to an allowance of 2½ per cent for normal outage from the capacity as shown by the gauger's return or the invoice quantity, according to the circumstances.

In the *Kolmar* case, *supra*, we stated that we were in accord with the Government's contention that duty is assessable upon the importation upon the basis of the "contents in condition as exported," pointing out that—

\* \* \* The regulations governing the enforcement of the provisions of paragraph 813 are predicated upon the assumption that the law provides that duty shall be levied upon wines, liquors, cordials, and distilled spirits upon the basis of their exported quantities. Therefore the "contents in condition as exported" is held to mean the invoiced quantities. Where the collector is in doubt as to the exported quantities as evidenced by the invoice because of a lack of specifications of the contents of each barrel accompanying the invoice, or where the gauger finds more liquor than the invoice calls for and there still remains an abnormal outage, the collector is directed to base his assessment of duties upon the capacity of the casks less a normal outage of 2½ per centum. The collector's action in assessment of duty upon such basis has been held to be legal and the regulations constitutional.

There the Government relied largely upon *Park & Tilford* v. *United States*, 9 Ct. Cust. Appls. 53, T. D. 37906, and this court, in citing portions of that decision, stressed the following:

\* \* \* It is certainly no forced application of this provision to require an importer of liquor in casks to declare in the invoice the correct quantity in each cask at exportation. \* \* \* If an importer of liquor fails to make such a declaration in his invoice, or makes an incorrect one therein, he can have no right to complain if the reported capacity of the containers be accepted by the collector as the quantity in them at the time of exportation. \* \* \*

According to the Treasury regulations, therefore, the collector was justified in finding that at the time of shipment the casks in question respectively contained a greater quantity of liquor than at the time of their arrival in this country, and that the shortage had not occurred from such causes as should be allowed for in view of the prohibitions of paragraph 244, *supra*.

Our appellate court also pointed out that the importations there involved consisted of whiskies which had aged in the casks for years before being purchased and the casks were never opened, and as the exact amount of evaporation during the years is not always rightly computed, there would be a difference in the amount stated in the invoice and the amount found by the gauger, and distinguishes that case from the case before it because in the *Kolmar* case, *supra*, the contents in each barrel at the time of exportation were before the liquidator, and the question of improper invoicing, or failure to meet the entry requirements in respect to the importations of liquors that may have been before the court in the *Park & Tilford* case, *supra*, was not before the court.

In the *Kolmar* case, *supra*, this court also noted that the Circuit Court of Appeals, Second Circuit, in a *per curiam* decision by Wallace, LaCombe, and Coxe, Circuit Judges, *United States* v. *Shaw*, 144 Fed. 329, T. D. 27226, quoted with approval Judge Somerville's decision construing the words "constructive allowance," as "an allowance which may be presumed or implied, or which would exist in contemplation

of law, rather than an allowance for an actual leakage established by affirmative proof." The pertinent portion of the Board's decision, applicable to the case before us as approved by the Circuit Court, follows:

> * * * We are of opinion that, where the quantity of wine or liquor shipped from the port of origin is described on the invoice as so many gallons or liters as required by law, the collector is justified in assuming that such quantity was shipped. Invoices are sworn documents and presumably are correct. * * * The rule being also settled that there is a presumption in favor of the correctness of a collector's decision in assessing duties on imported merchandise, unless controverted by the record or other evidence, we think the onus was on the importers in the present cases to furnish some evidence to rebut the legitimate assumption that the reduction in the quantity shipped was attributable to no other causes than leakage. The disappearance of so great a quantity from the casks is not easily explainable on any other theory.

Counsel for the Government, although conceding that the weight method of measuring liquors is more reliable than the rod method, as used by the Government gauger, stresses that the detailed specifications showing the gauged quantity of each barrel were not attached to the invoice at the time of entry; that the filing of such specifications after entry, and after the gauging was performed by the Government gauger, but prior to liquidation, does not satisfy and comply with the requirements of article 817 of the Customs Regulations of 1931; and that therefore to accord the importer the right to establish the quantity imported at the trial is to overlook the fundamental proposition that the regulations as to the invoicing of liquor and allowance for damage are effective as of the time of importation. Thus the specifications must be filed then or the quantity found by the gauger is conclusive.

A careful examination of the invoice and entry papers as well as the testimony fails to disclose anything to substantiate the Government's contention that the specifications, that is to say, the packing list, was not filed at the time of entry. In fact, the specifications bear a notation that "This Packing List forms part of Consular Invoice No. 373," the number of the consular invoice before us in this case. The packing list was sent to the court along with the invoice and entry papers and from appearance thereof was attached thereto. True, counsel for the importer entered into a stipulation with counsel for the Government, specifically agreeing that the packing list was before the liquidator at the time of liquidation, but that agreement cannot be construed as stated by counsel for the Government in brief "that detailed information showing the gauged quantity of each barrel had been submitted to the collector prior to liquidation, although after entry." From all that appears before us, the specifications in this case were actually present at the time of entry of the merchandise as a part of the consular invoice. In this respect this case differs from the *Kolmar* case, *supra*, as the specifications there were before the collector at the time of liquidation, but not at the time of entry.

The plaintiff contends that these specifications were a part of the invoice. If such is the case, and there is nothing before us to controvert such fact, the collector in assessing the goods upon the basis of the capacity of the casks, less 2½ per centum for outage, failed to follow the regulations, article 817 (d), *supra*.

Following this court's decision in the *Kolmar* case, *supra*, we hold that the importer may submit proof before this court to establish the actual quantity of the merchandise, and as the plaintiff has here established beyond any question of doubt that the invoiced and entered quantities of the whisky in question were the actual quantities exported, judgment will be entered directing the collector to reliquidate the entry and make refund accordingly.