(C. D. 938)

THORNLEY & PITT v. UNITED STATES

United States Customs Court, Third Division

(Decided July 5, 1945)

*Philip Stein* for the plaintiff.

*Paul P. Rao*, Assistant Attorney General (*James F. Donnelly, Joseph A. Howard, Jr.*, and *Harold L. Grossman*, special attorneys), for the defendant.

Before CLINE, KEEFE, and EKWALL, Judges

CLINE, Judge: This is a protest against the assessment of duty by the collector on 744.45 proof gallons of straight bourbon whisky contained in 15 barrels entered at San Francisco on March 11, 1935, in customs bonded warehouse. Prior to January 1, 1936, five barrels were withdrawn and duty paid at the rate of $5 per proof gallon under paragraph 802 of the Tariff Act of 1930. The remaining 10 barrels were withdrawn subsequent to the trade agreement with Canada, T. D. 48033, which amended paragraph 802 by reducing the rate of duty to $2.50 per proof gallon, and duty was paid at that rate. An internal revenue tax of $2 per proof gallon under the revenue act of 1934 was likewise assessed on the 15 barrels. The protest claims that the assessment of duties and the assessment of the internal revenue tax should have been based on the net quantity imported. Counsel for plaintiff states in his brief, however, that the protest is abandoned with respect to the internal revenue tax and that plaintiff pleads *nolo contendere* with respect to the five barrels which were withdrawn prior to January 1, 1936. The issue therefore is confined to the contention that duty was assessed on an excess gallonage on the 10 barrels withdrawn from warehouse after January 1, 1936.

Paragraph 813 of the Tariff Act of 1930 provides:

There shall be no constructive or other allowance for breakage, leakage, or damage on wines, liquors, cordials, or distilled spirits, except that when it shall

appear to the collector of customs from the gauger's return, verified by an affidavit by the importer to be filed within five days after the delivery of the merchandise, that a cask or package has been broken or otherwise injured in transit from a foreign port and as a result thereof a part of its contents, amounting to 10 per centum or more of the total value of the contents of the said cask or package in its condition as exported, has been lost, allowance therefor may be made in the liquidation of the duties.

Although a receipt issued March 13, 1935, when the merchandise was placed in bonded warehouse, indicates that 10 of the barrels were damaged and a storekeeper's report dated August 20, 1935, states that 11 barrels were inspected and recoopered, no claim is made that as a result of such damage 10 per centum of the contents was lost. The claim is made under article 817 of the Customs Regulations of 1931 and Bureau Letter No. 70143, dated September 12, 1934, that duty was assessed on a greater quantity than was exported.

The pertinent provisions of article 817 of the Customs Regulations of 1931 provide:

(d) "Contents in condition as exported" is held to mean the invoiced quantities, provided specifications are given for each individual package, otherwise the "contents exported" shall be held to be the gross capacities returned by the gauger.

(e) Outages not within the scope of the preceding subdivisions of this article by reason of being under 10 per cent or not being the kind of loss provided in the law, or by failure to file timely affidavit, will be subject to an allowance of 2½ per cent for normal outage from the capacity as shown by the gauger's return or the invoice quantity, according to the circumstances.

Bureau Letter No. 70143 provides in part:

The Bureau has been advised by the Collector at the port of New York that the following practice has been established at that port, to be followed by liquidators in liquidating entries covering wines and liquors.

When the invoice net quantity of wines and liquors is more than one gallon less than the gauger's net, estimate the outage on the invoice net quantity, but not less than the actual quantity reported by the gauger. The rule which follows would seem to cover any possible condition:

(1) If the invoice quantity is greater than the gauger's gross or less than the gauger's net minus one, assess duty on the gauger's gross less 2½% normal outage.

(2) If the invoice quantity is less than the gauger's gross and not less than the gauger's net minus one, assess duty on the invoice quantity less 2½% normal outage.

(3) But in no case shall duty be assessed upon less than the gauger's net.

The "minus one" in the order to the liquidators, means a deduction of one gallon per cask from the gauger's net. It is presumably deducted on account of additions made for correction of volume and fractions of gallons by the U. S. Gauger at the time of gauging. In this connection, note T. Ds. 30970 and 31796 and Article 1357 of the Customs Regulations of 1931.

The Bureau is of the opinion that the New York practice is a reasonable one, and suggests its adoption at your port.

Plaintiff claims that the invoice quantity was less than the gauger's gross and that, according to the rules above stated, duty should have

been assessed on the invoice quantity less 2½ per centum normal outage.

The consular invoice states that the merchandise consists of "Fifteen (15) barrels straight bourbon whisky containing a total of 669.51 proof gallons." No specifications giving the amount in each package are attached. The weigher's certificate shows the gross capacity of the barrels to be 762 gallons and the net quantity less tare outs to be 663½ gallons. When 2½ per centum is taken from the gross capacity for normal outage, an amount equal to 744.45 gallons remains. It was upon that amount that duty was assessed.

At the first hearing plaintiff had marked for identification an affidavit executed in Panama City by the manager of the Womack American Whisky Co. and sworn to before the American vice consul on November 29, 1935. This affidavit gives specifications for each of the 15 barrels of whisky here involved, showing a total quantity of 669.51 gallons. It was never offered in evidence and is only mentioned here because the briefs seem to confuse it with a subsequent statement dated May 20, 1936.

The statement dated May 20, 1936, is attached to the official papers transmitted by the collector. It was signed by the manager of the Womack American Whisky Co. and includes the same specifications as are set forth in the affidavit above mentioned. On the same sheet of paper is a certificate signed by the administrator of the General Liquor Revenue of the Republic of Panama to the effect that the declarations therein are correct according to official records. The original document is in Spanish and a translation is appended. There is nothing on the original document or the translation to show when they were filed with the collector.

At the first hearing counsel for the plaintiff offered in evidence the weigher's certificate, but objection was made by counsel for the Government and it was merely identified by description. At the second hearing counsel for plaintiff stated that certain documents had not been forwarded to the court and requested that the collector be directed to insert in the court jacket all other official papers affecting the entry. Although counsel for the Government objected on the ground that the weigher's certificate might then go into evidence, the court, by Walker, J., stated:

\* \* \* I am going to make an order directing the collector to place those documents in the record, and we will take them for what they are worth.

Thereafter all related papers were forwarded to the court by the collector.

No witnesses were called nor was any further evidence offered by either party.

Plaintiff's claim in substance is that the statement dated May 20, 1936, constitutes the specifications required by article 817, *supra;*

that it was duly filed with the collector prior to the regauging and withdrawal of the 10 barrels; and that the collector should have assessed duty on the basis of the net quantities shown in the specifications, rather than on the gross quantities given in the weigher's certificate.

The filing of specifications is a condition precedent to the assessment of duties on a less quantity than the gross capacity of the containers. The burden is upon the importer to furnish the specifications. In *Park & Tilford* v. *United States*, 9 Ct. Cust. Appls. 53, T. D. 37906, the court said (pp. 57–58):

* * * If an importer of liquor fails to make such a declaration in his invoice, or makes an incorrect one therein, he can have no right to complain if the reported capacity of the containers be accepted by the collector as the quantity in them at the time of exportation. It is equally clear that the importers in this case can not claim exemption from the duty of correctly declaring in the invoice the quantity shipped in the casks, because of the inconvenience of gauging their casks before shipment, or the danger of blending which would result from that operation. * * *

It may be, however, that the specifications need not be filed with the invoice, but at such time as required by the collector. *Kolmar, Inc.* v. *United States*, 13 Cust. Ct. 134, C. D. 884, appeal dismissed January 4, 1945. The difficulty with plaintiff's case is that there is nothing to show when the statement containing the specifications was filed with the collector. In the *Kolmar* case, it was established that the specifications were before the liquidator at the time of liquidation. In that case, moreover, there was additional evidence showing the amount of whisky actually exported. It was held that proof could be made in open court of the amount actually exported; that plaintiff had proved the amount by satisfactory evidence; and that the collector should reliquidate the entry on the basis of the actual quantity exported instead of the gross capacity of the barrels. In discussing the method of assessment in cases involving the quantity of liquors, the court said:

We are in accord with the Government's contention that duty is assessable upon the involved importation upon the basis of the "contents in condition as exported." The regulations governing the enforcement of the provisions of paragraph 813 are predicated upon the assumption that the law provides that duty shall be levied upon wines, liquors, cordials, and distilled spirits upon the basis of their exported quantities. Therefore the "contents in condition as exported" is held to mean the invoiced quantities. Where the collector is in doubt as to the exported quantities as evidenced by the invoice because of a lack of specifications of the contents of each barrel accompanying the invoice, or where the gauger finds more liquor than the invoice calls for and there still remains an abnormal outage, the collector is directed to base his assessment of duties upon the capacity of the casks less a normal outage of 2½ per centum. The collector's action in assessment of duty upon such basis has been held to be legal and the regulations constitutional. The Government, however, in relying upon the de-

cisions cited, overlooks the fact that all of those cases were decided upon a record containing no facts additional to such as were before the collector. In each instance the importer was unable or failed to establish the quantities shipped. In the case before us, however, the importer not only has established the exact quantities of whisky shipped in each barrel, but the specifications showing the quantities in each barrel are before us and, in addition to that, the evidence further shows that either the specifications or packing list showing the contents of each barrel was before the liquidator at the time of liquidation.

In the instant case, however, those two conditions are lacking; that is, there is nothing to show that the specifications were filed before liquidation nor is there any evidence to show the actual quantity exported. The effect of noncompliance with those conditions is illustrated by *Oldetyme Distillers, Inc.* v. *United States*, 13 Cust. Ct. 127, C. D. 883. There whisky was withdrawn from warehouse, exported, refused admittance into the country of destination, and returned to this country. The whisky was originally gauged at 967.94 proof gallons; upon withdrawal for export it was regauged at 790.25 proof gallons; upon return to New York it was again gauged and the contents reported as 756 proof gallons. The collector disregarded the regauged quantity and calculated the duty upon the basis of 962.01 proof gallons, figured from the capacity of the kegs less 2½ per centum for outage. No invoice or specifications were filed with the papers. The court overruled the protest, stating:

In this case there was no evidence of any kind before the collector as to the quantity of liquor in these casks or kegs except that found by the United States Government gauger. Therefore, under the regulations, it was the duty of the collector to adopt for duty purposes the capacity of the kegs or casks as reported by the customs gauger less the outage of 2½ per centum.

This liquor had been in bonded warehouse. Had it entered into consumption without either being exported or reimported, there is no doubt that it would be the duty of the collector to levy duty upon the original gauge, to wit, 967.94 proof gallons, which is 5.93 proof gallons more than the capacity of the barrels, less 2½ per centum, the quantity used by the collector in his assessment of duty. In any event, there was no proof whatever before the collector, nor is there any before this court, of the amount of liquor in the casks at the time of exportation, not even an invoice, which in the case of *Seagram* v. *United States*, 30 C. C. P. A. 150, C. A. D. 227, was held to be some evidence of the quantity. There the collector assessed duty in accordance with article 815, *supra*, "because the gaugers' returns showed larger quantities than those shown in the invoices." The court found that the importer had established that the customs gaugers had improperly determined the quantity of liquor in the casks and their action was void.. Consequently the invoiced quantities were held to be evidence of the quantity of liquor to be adopted by the collector upon which duty should have been assessed.

In *Joseph E. Seagram* v. *United States*, 30 C. C. P. A. 150, C. A. D. 227, it was held that since the gauging by Government officials was illegal and void, the presumption of correctness attaching to the action of the collector was overcome and duty was directed to be assessed on the basis of the invoiced quantities. In the present case,

however, there is nothing to overcome the presumption in favor of the collector's action in the first instance, and the importer has offered no evidence. The statement containing the specifications is not sufficient for that purpose. *United States* v. *National Aniline & Chemical Co.*, 3 Ct. Cust. Appls. 10, T. D. 32287. In that case there was involved an unsworn certificate (that no alcohol was used in manufacturing the product) attached to the consular invoice which was forwarded by the collector as part of the official papers. The court said (p. 17):

> \* \* \* It was attached to the consular invoice and therefore was presumably considered by the collector in classifying the merchandise. To hold that in this court it has sufficient probative force to overcome the presumption of the correctness of the classification of the collector is to give to an unsworn *ex parte* statement all the probative force that a deposition under oath with opportunity afforded for cross-examination of a witness would be entitled to receive.

See also *Borgfeldt & Co.* v. *United States*, 11 Ct. Cust. Appls. 421, T. D. 39433; *United States* v. *C. J. Holt & Co., Inc.*, 17 C. C. P. A. 385, T. D. 43822.

We hold, therefore, that the importer has failed to overcome the presumption of correctness attaching to the collector's action. The protest is overruled. Judgment will be entered for the defendant.